Forest BATES, James Clemons, Howard Hopkins, Roy Howard, Elbert Kelley, James Williams, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

PACIFIC MARITIME ASSOCIATION, et al., Defendants-Appellees,

and

Eagle Marine Services, Ltd., Defendant-Appellant.

No. 83–5540.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 3, 1984.

Decided Oct. 4, 1984.

Anita Knowlton, Taylor, Roth & Hunt, Los Angeles, Cal., for plaintiffs-appellees.

Warren Bo Duplinsky, EEOC, Washington, D.C., amicus curiae.

Howard C. Hay, Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., for defendant-appellant.

Before SNEED, KENNEDY, and BOO-CHEVER, Circuit Judges.

KENNEDY, Circuit Judge:

Eagle Marine Services, Ltd. (Eagle Marine) appeals from a district court judgment that it must comply with the remedial provisions of a Title VII consent decree. Eagle Marine was not an original party to the consent decree, but replaced one of the original parties at one job site. The district court held Eagle Marine bound by the provisions of the decree under the successorship doctrine. We have jurisdiction under 28 U.S.C. §§ 1291, 1331 and 42 U.S.C. § 2000e–5(f)(3). We affirm.

In 1975 named plaintiffs Bates, Clemons, Hopkins, Howard, Kelley, and Williams (plaintiffs) brought a class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and 42 U.S.C. § 1981 (1982), against the Pacific Maritime Association (PMA), the International Longshoremen's and Warehousemen's Union (ILWU), and Local 13 of the ILWU, alleging racial discrimination in the hiring of longshoremen in the Los Angeles-Long Beach harbor. In 1977 the district court entered a consent decree in settlement of the action. The decree required that four of every ten new longshoremen hired by the defendant employers should be black, until the proportion of black longshoremen employed by the defendants in the harbor equaled the proportion of qualified black applicants in the labor pool. The signatories of the decree did not admit wrongdoing, and the decree is silent as to its effect on successor parties.

The PMA is an association of companies engaged in maritime shipping, receiving, and warehousing of goods along the Pacific Coast. In one of its many functions, the PMA acts as the representative of employers in collective bargaining with the ILWU, including bargaining on employment practices.

The consent decree was by its terms applicable to all PMA-member employers of longshoremen in the Los Angeles-Long Beach harbor. Among those employers was Metropolitan Stevedoring Company (Metropolitan). One of Metropolitan's several operations in the harbor was the provision of stevedoring services to two berths owned by American President Lines (APL). APL was a member of the PMA when the consent decree was entered, but at the time employed no longshoremen directly. In 1978, after the consent decree was entered, APL formed a wholly-owned subsidiary, Eagle Marine. On January 1, 1979, Eagle Marine replaced Metropolitan as the provider of stevedoring services to the APL berths. APL and Eagle Marine are both current members of the PMA. Through the PMA both Eagle Marine and APL had actual knowledge of the consent decree and its applicability to Metropolitan's operations at the APL berths.

The district court found that the consent decree, when originally entered, applied only to those members of the PMA who employed longshoremen at the time of the decree. Neither APL nor Eagle Marine employed longshoremen when the decree was entered and thus were not originally covered by the consent decree. Plaintiffs do not challenge this holding.

Eagle Marine provides the same services to APL berths that Metropolitan did, using the same facilities and equipment. Eagle Marine uses APL-owned equipment formerly used by Metropolitan and rolling stock and equipment purchased from Metropolitan. The majority of Eagle Marine's new longshore work force were former Metropolitan APL berth longshoremen. Almost all of Metropolitan's former APL berth longshoremen applied for jobs with Eagle Marine; all who applied were hired. A number of other qualified applicants for the Eagle Marine longshoremen positions were not hired in order to hire the former Metropolitan employees. Metropolitan continues to employ longshoremen and provide stevedoring services at other locations in the harbor and retains membership in the PMA. On the basis of this substantial identity of operations and work force, the district court held Eagle Marine to be a successor to Metropolitan, bound by Metropolitan's obligations under the consent decree.

Implicit in the district court's holding was that the consent decree was not applicable to Eagle Marine until after it had hired the former Metropolitan employees. Plaintiffs have not challenged Eagle Marine's right to hire its initial work force almost exclusively from the pool of former Metropolitan APL berth employees. Plaintiffs also acknowledge that Eagle Marine was not covered by the consent decree until after it had hired the former Metropolitan employees.

■ In certain circumstances a new employer will be held liable for the legal obligations of its predecessor employer though explicit assumption of the obligations is absent. Successor liability is applied only when necessary to further some fundamental policy in regulation of the industry or work place affected. Successorship first developed in the context of obligations under the National Labor Relations Act. 29 U.S.C. § 151, *et seq.* (1982). In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), an employer was held obligated to abide by a provision for the arbitration of grievances contained in the contract between a union and the prior employer, acquired by the new employer by way of merger. A new employer's obligations under the National Labor Relations Act have been expanded to include a duty to bargain in good faith with the union which represented its workers with the previous employer, *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 277–81, 92 S.Ct. 1571, 1577–1579, 32 L.Ed.2d 61 (1972), and to provide back pay and reinstatement to individual victims of a predecessor's unfair labor practice, *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973).

■ Not all obligations owed by a former employer to its former employees will be transferred to a new employer. For example, an employer is not bound by the substantive terms of a contract between a union and its predecessor. *Burns International Security Services*, 406 U.S. at 281–91, 92 S.Ct. at 1579–1584. In that situation

the concerns of continuity and predictability in labor relations are outweighed by the strong policy in favor of requiring all binding agreements to be established through the process of collective bargaining. *See id.* at 287, 92 S.Ct. at 1582. Similarly, a business entity which replaces another is not obligated to hire all or any of its predecessor's employees. *Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). *But see Kallmann v. NLRB*, 640 F.2d 1094 (9th Cir.1981) (refusal of a new employer to hire former employees because of their union affiliation constitutes a violation of §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)).

Different policy considerations and enforcement mechanisms are incorporated in Title VII; nonetheless, we have held the successorship doctrine to apply to Title VII obligations. *Slack v. Havens*, 522 F.2d 1091, 1094–95 (9th Cir.1975). In *Slack* we held a successor liable to provide redress to an individual victim of discrimination. *See also EEOC v. MacMillan Bloedel Containers*, 503 F.2d 1086, 1091 (6th Cir.1974). *Slack* therefore forecloses any argument that the successorship doctrine does not apply in the context of Title VII. Given our earlier holding in *Slack*, the question before us becomes whether the successorship doctrine applies in the circumstances before us.

As with unfair labor practices, courts have refrained from imposing liability under Title VII on succeeding employers where unwarranted by the facts of the case. *See In re National Airlines*, 700 F.2d 695 (11th Cir.1983) (granting class-wide injunctive relief would defeat *res judicata* of defendant's separate judgment, would require unequal treatment of employees, and would severely inhibit consolidation of operations of merged companies), *cert. denied*, —— U.S. ——, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983); *Brown v. Evening News Ass'n*, 473 F.Supp. 1242 (E.D.Mich. 1979) (previous employer still available to provide appropriate relief).

Under the National Labor Relations Act or under Title VII, successorship turns on the facts in the case. "[I]n light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *Howard Johnson*, 417 U.S. at 256, 94 S.Ct. at 2240. With respect to Title VII obligations:

> Each case ... must be determined on its own facts. What is required is a balancing of the purposes of Title VII with the legitimate and often conflicting interests of the employer and the discriminatee.

. . . . .

We emphasize that the liability of a successor is not automatic, but must be determined on a case by case basis. *MacMillan Bloedel Containers*, 503 F.2d at 1090–91; *accord In re National Airlines*, 700 F.2d at 698–99.

■ We turn to the case before us. First, we see nothing inherent in either classwide Title VII relief or consent decrees that precludes operation of the successorship doctrine. Classwide relief may involve a greater impact on the parties than individual relief. Nevertheless, there is no reason to believe that the equities in such cases will always favor the employer rather than the class seeking relief. In the context of NLRA obligations, successor employers may be required to remedy their predecessor's unfair labor practices on a broad scale. *See NLRB v. Fabsteel Co.*, 587 F.2d 689 (5th Cir.) (successor required to reinstate group of 22 strikers illegally fired by predecessor despite hiring of permanent replacements), *cert. denied*, 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979). The competing interests of successor employer and class claimant are equally susceptible to accommodation when Title VII is the source of the initial obligation. *See In re National Airlines*, 700 F.2d 695 (facts led to denial of successor liability for classwide relief).

■ Eagle Marine is incorrect in contending that successor liability is inappropriate under Title VII consent decrees because there is no judicial finding of intentional discrimination. In successorship cases, it is necessary to distinguish between the necessity for finding discrimination in the first instance, and the enforcement of an already established obligation against a successor employer. *See Golden State Bottling Co.*, 414 U.S. at 174–85, 94 S.Ct. at 420–425 (successor required to reinstate employee fired by predecessor in violation of labor laws). The consent decree established the liability of Metropolitan. It is the enforceability of the consent decree obligation against Eagle Marine that is at issue, not the enforcement of some unresolved Title VII obligation. The consent decree's recitation of the standard language that defendants admit no wrongdoing does not avail Eagle Marine. Such language may prevent the consent decree from being used as an admission of wrongdoing in collateral proceedings against the defendants. Successorship liability, however, rests upon the consent decree itself, not upon some independent admission of wrongdoing.

■ Eagle Marine also asserts that no consent decree may be enforced against a successor employer where the successor employer is not a party to the decree. That the new employer is not a party to the consent decree is of course irrelevant, for that is the whole point of the successorship doctrine. The question is whether the successorship doctrine applies and, if so, on what rationale.

■ Having determined that Title VII consent decrees may form the basis for successor liability, we next consider whether imposition of the liability is consistent with legitimate expectations of Eagle Marine and the interests of the plaintiffs under the decree. There are three principal factors bearing on the appropriateness of successor liability for employment discrimination: (1) the continuity in operations and work force of the successor and predecessor employers, (2) the notice to the succes-

sor employer of its predecessor's legal obligation, and (3) the ability of the predecessor to provide adequate relief directly. *Slack v. Havens*, 522 F.2d at 1094–95; *Trujillo v. Longhorn Manufacturing Co.*, 694 F.2d 221, 224 (10th Cir.1982); *MacMillan Bloedel Containers*, 503 F.2d at 1094. These factors indicate that both fairness and necessity are inherent considerations in successorship analysis. In this instance, all three factors weigh in favor of imposing liability on Eagle Marine.

■ In virtually every respect, Eagle Marine's operations at the APL berths are the same as those of Metropolitan, but for the identity of the employer. Eagle Marine provides the same service, using the same equipment. The location and customers are the same. Most important, Eagle Marine uses many of the same personnel. Metropolitan's former APL berth employees, a group Eagle Marine conceded at oral argument was all white, were given hiring preference by Eagle Marine and made up the bulk of Eagle Marine's initial work force. In this respect, the consent decree was an actual shield for Eagle Marine in its initial hiring determination. In no relevant respect, therefore, can Eagle Marine's operations be distinguished from those of its predecessor.

Eagle Marine does not dispute that it had actual knowledge of the existence of the consent decree. Before Eagle Marine was formed, its parent, APL, was well aware of the consent decree through its involvement in the PMA. Any liability now imposed should come as no surprise to Eagle Marine. Eagle Marine may not have used this notice to negotiate lower prices from Metropolitan. Nevertheless, the information allowed Eagle Marine to consider whether to displace Metropolitan and to shape its hiring practices to avoid any potential problems. An employer is not necessarily relieved of successor obligations simply because it displaces the former employer rather than purchasing or merging with it. *See Burns International Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61. Eagle Marine was not entirely separated from Metropolitan. Eagle Marine's parent, APL, was a primary customer of Metropolitan's at this site and still owns the facilities used by both Metropolitan and Eagle Marine. It leased necessary equipment to Metropolitan. Eagle Marine itself purchased necessary equipment, not already owned by APL, for its operations directly from Metropolitan. Eagle Marine has little claim to being a stranger to the work site. Eagle Marine's choice to take over Metropolitan's APL berth operations informally through the hiring of its former employees and the purchase of some of its equipment, rather than through a more formal acquisition, will not shield it from successorship liability. *See Golden State Bottling Co.*, 414 U.S. at 182–83, 94 S.Ct. at 424–425 n. 5.

The third factor, availability of the predecessor employer to provide adequate relief, presents a closer question, but, in our opinion, still favors the imposition of liability. Eagle Marine asserts that plaintiffs have an adequate remedy available from Metropolitan. Metropolitan remains an active employer of longshoremen at other locations in the harbor. This might have provided plaintiffs with an adequate opportunity for relief if they had sought only monetary and injunctive relief for themselves as individuals. *See Brown v. Evening News Ass'n*, 473 F.Supp. 1242 (successor liability to individual victim of discrimination inappropriate where predecessor employer continued to employ individuals in similar positions in same field). Plaintiffs, however, sought and received classwide relief. The relief to which the consent decree entitled plaintiffs was a certain level of representation of blacks among the longshore work force of Metropolitan and other PMA member employers in the harbor. The former Metropolitan longshoremen hired by Eagle Marine when it came into existence were part and parcel of the work force covered by the consent decree. Representation of blacks within Eagle Marine's longshore ranks is thus a necessary component of the relief which the consent decree granted plaintiffs. To hold otherwise would significantly diminish the relief the consent de-

cree grants plaintiffs; representation of the plaintiff class would be restricted to a smaller work force simply because a portion of the originally covered work force is now employed by a different legal entity.

 In addition to these three traditional factors, other equitable concerns do not counsel against the imposition of successor liability. There is no significant impact on the rights of third parties. The consent decree does not affect the rights of the former Metropolitan employees hired by Eagle Marine; Eagle Marine's obligations as a successor did not begin until after it hired the former Metropolitan employees. The opportunity for qualified non-black applicants to be hired is the same as if Eagle Marine had never come into existence. Second, the manner in which Eagle Marine operates its business will not be severely impaired. *Cf. In re National Airlines,* 700 F.2d at 699 (imposition of successor liability would lead to disparate treatment among employees and would hinder plans to merge route structure). The consent decree does not require Eagle Marine to hire any new employees. Only upon Eagle Marine's decision to hire new employees must the consent decree's requirements be met. Even then the consent decree does not require Eagle Marine to hire anyone who is not qualified. Because the consent decree does not require Eagle Marine to hire any person or to pay any back wages, Eagle Marine will suffer no direct expenses in complying with the decree.

■ Accordingly, we conclude that, under the particular facts of this case, successorship liability was properly imposed. The burdens placed on Eagle Marine are slight; the potential benefits to the plaintiff class are significant. Eagle Marine has taken actions, particularly in its choice of the persons it has hired, which properly subject it to successor liability. Eagle Marine had no obligation to hire any of the former Metropolitan employees. *Howard Johnson,* 417 U.S. 249, 94 S.Ct. at 2236. Having chosen to do so, it must also accept the obligations which attach to its decision. In deciding that Eagle Marine is subject, in

this instance, to the provisions of a class-wide Title VII consent decree, we do not address whether Eagle Marine or another new employer would be subject to other types of its predecessor's obligations, or whether the requirements of this consent decree would be binding in a different factual setting.

The judgment of the district court is AFFIRMED.