Justin STEINBACH; Gary Yurina; Robert Wattez; Elizabeth Blasdell; Scott Farlow; David Williams; Leslie Bannerman; Cheryl Bowman; Randy Vanderheiden; Janet Evans; Debbie Talley; Daylon Sweeney, Plaintiffs–Appellants,

v.

Steven HUBBARD, and the marital community of Steven and Sheila Hubbard d/b/a Hubbard Ambulance Services; Sheila Hubbard, d/b/a Hubbard Ambulance Services; Hubbard Ambulance Services, a Washington corporation, Defendants,

and

Care Ambulance Service, a Washington corporation, Defendant–Appellee.

No. 92–36961.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1994.

Decided April 3, 1995.

Steven B. Frank, Martin Garfinkel, Frank & Rosen, Seattle, WA, for plaintiffs-appellants.

Thomas W. Sondag, Lane, Powell, Spears, Lubersky, Seattle, WA, for defendant-appellee.

POOLE, Circuit Judge:

We are faced with a question of first impression: does successorship liability exist under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*? We conclude that it does, but not on the facts of this case.

I

Appellants are a group of twelve former employees of Hubbard Ambulance Services, Inc., run by defendants Steven and Sheila Hubbard. Hubbard provided non-emergency ambulance services. It also allegedly violated the FLSA by failing to pay its employees in accordance with the FLSA's minimum wage and overtime provisions. Whether it in fact did so is not at issue in this appeal.

In 1987, Hubbard and the individual Hubbard defendants filed bankruptcy petitions. Hubbard continued to provide ambulance services. The employees first filed suit in June 1991. Later that summer, Care Ambulance entered into negotiations with Hubbard over the possible sale of Hubbard's assets to Care. During a September meeting, two Care vice presidents were informed of the pending FLSA suit, as well as Hubbard's opinion that it was meritless.

Negotiations continued. Because the parties believed any sale would require the approval of the bankruptcy court, they could not reach an outright sale agreement. Instead, Hubbard and Care agreed to a one-year lease of assets at $600 per month, an employment contract for Steven Hubbard, and an agreement to buy conditioned on receipt of bankruptcy court approval.

On October 31, 1991, Hubbard ceased operations, and the next day, Care began operations. Care rehired Hubbard's nine employees. Only one of the plaintiffs was still with Hubbard, and thus hired by Care. Care provided ambulance services from the same office, operating at first under the name "Hubbard/Care." The operations manager remained the same. Care continued to use a vehicle leased from Hubbard for a time, and, according to plaintiffs, virtually the same medical equipment. Care also made a down payment on the purchase agreement.

However, the bankruptcy court never approved the sale, and Care discontinued its efforts to purchase Hubbard's assets. On January 27, 1992, Care signed a purchase agreement with another ambulance company. During February, Care moved its offices, terminated its lease, and returned all leased equipment to Hubbard.

■ In March 1992, plaintiffs amended their complaint to add Care as a defendant, on the theory that Care was Hubbard's successor and could therefore be held liable for Hubbard's alleged FLSA violations. The district court granted Care's motion for summary judgement, concluding that Care was not a successor for FLSA purposes. This ruling was properly certified for interlocutory appeal pursuant to Fed.R.Civ.P. 54(b). We review de novo the district court's grant of summary judgment. *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We affirm.

## II

The FLSA, like virtually all employment law statutes, does not discuss whether the liabilities it creates may be passed on to innocent successor employers. However, beginning with cases under the National Labor Relations Act ("NLRA"), federal courts have developed a federal common law successorship doctrine that now extends to almost every employment law statute. *See Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) (NLRA); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323 (7th Cir.1990) [hereinafter *Upholsterers'*]

(Multiemployer Pension Plan Amendments Act ("MPPAA")); *Secretary of Labor v. Mullins,* 888 F.2d 1448 (D.C.Cir.1989) (Mine Safety and Health Act); *Criswell v. Delta Air Lines, Inc.,* 868 F.2d 1093 (9th Cir.1989) (Age Discrimination in Employment Act); *Trustees for Alaska Laborers–Construction Industry Health & Sec. Fund v. Ferrell,* 812 F.2d 512 (9th Cir.1987) [hereinafter *Trustees* ] (ERISA); *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740 (7th Cir.1985) (42 U.S.C. § 1981); *Bates v. Pacific Maritime Ass'n,* 744 F.2d 705 (9th Cir.1984) (Title VII).

Successorship liability was originally adopted under the NLRA to avoid labor unrest and provide some protection for employees against the effects of a sudden change in the employment relationship. *Golden State Bottling Co.,* 414 U.S. at 182–85, 94 S.Ct. at 424–26; *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964). In deciding to extend successorship liability to other contexts, courts have recognized that extending liability to successors will sometimes be necessary in order to vindicate important statutory policies favoring employee protection. *Upholsterers',* 920 F.2d at 1326–27; *Musikiwamba,* 760 F.2d at 746; *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1091 (6th Cir.1974). Where employee protections are concerned, "judicial importation of the concept of successor liability is essential to avoid undercutting Congressional purpose by parsimony in provision of effective remedies." *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1237 (7th Cir.1986).

■ The FLSA was passed to protect workers' standards of living through the regulation of working conditions. 29 U.S.C. § 202. That fundamental purpose is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA. The analysis set forth in the cases extending potential liability under these statutes justifies application of the doctrine here as well. Consequently, we conclude that successorship liability exists under the FLSA.

■ We borrow as well the same basic standards used in these other employment contexts. Under the NLRA, successor liabil-

ity can attach when 1) the subsequent employer was a bona fide successor and 2) the subsequent employer had notice of the potential liability. *See Golden State Bottling Co.,* 414 U.S. at 171–72 n. 2, 173, 94 S.Ct. at 419 n. 2, 419–20. Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor. *See Upholsterers',* 920 F.2d at 1329; *Criswell,* 868 F.2d at 1094; *NLRB v. Jarm Enters., Inc.,* 785 F.2d 195, 200–201 (7th Cir.1986); *Bates,* 744 F.2d at 709. The Ninth Circuit has fleshed out this test when dealing with other employee individual rights statutes by adding a third consideration: the extent to which the predecessor is able to provide adequate relief directly. *Criswell,* 868 F.2d at 1094; *Bates,* 744 F.2d at 709–10.

■■■ Certain broader principles apply. As this and other courts have recognized, successorship's roots lie in equity. *E.g., Baker v. Delta Air Lines, Inc.,* 6 F.3d 632, 637 (9th Cir.1993); *Criswell,* 868 F.2d at 1094; *Musikiwamba,* 760 F.2d at 750. Consequently, "fairness is a prime consideration in [successorship's] application." *Criswell,* 868 F.2d at 1094; *accord Bates,* 744 F.2d at 710. Decisions on successorship must balance, *inter alia,* the national policies underlying the statute at issue and the interests of the affected parties. *See Howard Johnson Co. v. Detroit Local Joint Executive Bd.,* 417 U.S. 249, 262–63 n. 9, 94 S.Ct. 2236, 2244 n. 9, 41 L.Ed.2d 46 (1974); *Bates,* 744 F.2d at 709. Finally, "in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *Howard Johnson,* 417 U.S. at 256, 94 S.Ct. at 2240; *accord Bates,* 744 F.2d at 709.

### III

We turn to an application of this test. Taking into account fairness and the policies and interests at stake, we conclude that we cannot impose Hubbard's FLSA liability, if any, on Care.

We inquire first whether Care is in fact a bona fide successor of Hubbard. Considering only the internal workings of the business, many elements remained identical. Care hired the same employees, operated out of the same office, provided the same general services, kept the same operational supervisor, and used the same or similar equipment. *Cf. NLRB v. Jeffries Lithograph Co.,* 752 F.2d 459, 464–65 (9th Cir.1985) (finding continuity where successor retained essentially same workforce in same plant doing same jobs under same supervisor with some of the same equipment, providing similar services).

The inquiry is not ended here. This case presents an additional circumstance neither present nor addressed in any of the successorship cases on which the employees rely: in this case, no permanent transfer occurred. Care leased equipment from Hubbard and used its employees on a temporary basis only. No agreement for a permanent transfer was ever reached, and indeed, when negotiations fell through, Care ended the lease and returned Hubbard's assets to Hubbard. On the facts of this case, we find such a failure to ever permanently transfer the business dispositive.

Two sets of equitable considerations inform our decision. First, considering the statute at issue, we recognize that the policies underlying the FLSA can best be effectuated by seeing to it that violations are remedied in as many cases as possible. Second, this case involves the attempted purchase of a company in distress. The impact potential liability could have on such transactions has been well explained by the Seventh Circuit:

> [T]he public has a substantial interest in the free transfer of capital and the reorganization of unprofitable businesses. Imposing liability … is likely to severely inhibit the reorganization or transfer of assets of a failing business. A company on the verge of bankruptcy may find itself deluged with meretricious claims for employment discrimination as employees see the prospect of a deep-pocket to provide relief. The failing company might also have to dissipate substantial but desperately-needed assets to defend against these lawsuits. In addition, that company will have difficulty selling its assets or business for a [decent] price because successors will be unwilling to assume a business involved in substantial time-consuming and expen-

sive litigation when the assets themselves lack substantial value.

*Musikiwamba,* 760 F.2d at 750–51; *see also NLRB v. Burns Int'l Security Servs., Inc.,* 406 U.S. 272, 287–88, 92 S.Ct. 1571, 1582, 32 L.Ed.2d 61 (1972) (recognizing public interest in free transfer of struggling companies as consideration weighing against successorship liability). While this second concern does not alone suffice to bar successorship liability, it does provide reason to consider transfers such as the one involved here in a different light.

■ Distressed companies like Hubbard do not always have an easy time finding suitors. As recognized in *Musikiwamba* and *Burns,* the possibility of statutory liabilities only makes those difficulties worse. It may be the case, however, that given the chance of a trial run—whether by leasing assets for a short period or having its own management temporarily take over operations—an acquirer could discover a potentially viable company in straits like Hubbard's. Such temporary arrangements benefit Care, they benefit Hubbard, and they benefit the former employees of Hubbard. Permitting shopping for dying companies increases the chances such companies may find buyers, thus also increasing the chances buyers will be found who perhaps may satisfy existing FLSA liabilities. Consequently, the interests of the affected parties, as well as the policies underlying FLSA and supporting free transfer of capital, lead us to conclude Care does not qualify as a bona fide successor.

In addition, while it is technically true that Care had notice of the existing lawsuits, the reality is that Care was in little better position to protect itself than were the former employees. The principle reason for the notice requirement is to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause. *See Golden State Bottling,* 414 U.S. at 185, 94 S.Ct. at 425–26. Because we are dealing in equity, we decline to close our eyes to the reality of the situation: in this case, because of the pending bankruptcy, there was little room for negotiation of protection. In noting this fact, we do not intend to shield companies who were merely lacking in foresight. We note only that, on the facts of this case, the equities underlying the notice prong do not weigh heavily in the employees' favor.

■ Finally, fairness plays a significant role as well. Care is faced with the possibility of nearly $100,000 in liability for having paid $600 monthly to lease Hubbard's assets for three to four months. In contrast, Hubbard's employees chances of recovering from Hubbard were by no means certain. While this fact does not foreclose liability, the purpose of successorship liability is not to provide windfalls for employees. *Musikiwamba,* 760 F.2d at 750. The fact that Hubbard might not have had the resources to recompense the plaintiffs prior to the transfer further tips the equities towards Care.

■ We recognize that previous successorship cases have held the form of transfer from one business to another to be of no consequence in the successorship inquiry. *Howard Johnson Co.,* 417 U.S. at 257, 94 S.Ct. at 2241; *Golden State Bottling Co.,* 414 U.S. at 183 n. 5, 94 S.Ct. at 424 n. 5; *Bates,* 744 F.2d at 710. The basis of this rule, however, is that ordinarily the relevant policy analysis will be unaffected by the type of transfer. *See Golden State Bottling Co.,* 414 U.S. at 183 n. 5, 94 S.Ct. at 424 n. 5 ("The refusal to adopt a mode of analysis requiring the [NLRB] to distinguish among mergers, consolidations, and purchases of assets is attributable to the fact that, so long as there is a continuity in the 'employing industry,' the public policies underlying the doctrine will be served by its broad application."). That is no longer the case here. Here, the fact that the transfer involved was temporary means the policies underlying FLSA are in fact better served by rejecting successorship liability. Thus, while the form of a transfer—merger, purchase, or replacement—may not matter, whether that transfer is temporary or permanent may in some cases make a crucial difference.

■ We recognize as well that we have in the past not placed much weight on the length of time a successor remains in business. *See Slack v. Havens,* 522 F.2d 1091, 1094–95 (9th Cir.1975) (finding company which had dissolved by the time suit was commenced liable as successor). Nothing in our decision today is at odds with that prior analysis. Our decision rests principally on

the nature of the arrangement Care and Hubbard had, not the length of time Care operated Hubbard. Because the arrangement involved a temporary trial lease of assets, FLSA's policies would best be promoted by finding no liability.[1]

## IV

We hold that successorship liability exists under the Fair Labor Standards Act. On the facts of this case, however, we conclude that Care's dipping its toe in the water and exploring the acquisition of Hubbard does not make it a bona fide successor. Considering all the equities, we find Care not liable.

AFFIRMED.

---

1. Faced with a longer-term commercial lease, we might conceivably have reached a different conclusion. However, this is so not because we consider time per se relevant, but because that sort of arrangement might have different implications for the policies and interests at stake. We adopt no per se rule that all leases create only temporary transfers. Each case must be examined on its facts. *Howard Johnson Co.*, 417 U.S. at 456, 94 S.Ct. at 2370.