# NELSON *v.* ADAMS USA, INC., ET AL.

No. 99–502.   Argued March 27, 2000—Decided April 25, 2000

GINSBURG, J., delivered the opinion for a unanimous Court.

*Debra J. Dixon* argued the cause for petitioner. With her on the briefs was *James L. Deese.*

*Jack Allen Wheat* argued the cause for respondents. With him on the brief were *Vance Armentrout Smith, Joel Thomas Beres,* and *John William Scruton.*

JUSTICE GINSBURG delivered the opinion of the Court.

This litigation began when Ohio Cellular Products Corporation (OCP) sued respondent Adams USA, Inc. (Adams), claiming patent infringement. The District Court eventually dismissed OCP's claim and ordered OCP to pay Adams' costs and attorney fees. Adams feared that OCP might be unable to pay the fee award and therefore sought a means to recover from petitioner Nelson, president and sole share-

holder of OCP, in his individual capacity. In pursuit of that objective, Adams moved under Rule 15 of the Federal Rules of Civil Procedure to amend its pleading to add Nelson as a party; Adams also asked the court, under Rule 59(e), to amend the fee award. The District Court granted the motion in full, simultaneously making Nelson a party and subjecting him to judgment. The Court of Appeals affirmed. We hold that the District Court erred in amending the judgment immediately upon permitting amendment of the pleading. Due process, as reflected in Rule 15 as well as Rule 12, required that Nelson be given an opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him.

I

OCP and its successor corporation held two patents relating to the method of manufacturing a foamed padding used in athletic equipment. In 1994, OCP sued Adams for infringement. Adams maintained that the patents had been anticipated by prior art and were therefore invalid under 35 U. S. C. § 102(b). The District Court ruled in Adams' favor and dismissed the infringement complaint.

Adams then moved for attorney fees and costs. The District Court granted the motion on the ground that Nelson, who was at all relevant times president and sole shareholder of OCP, had deceitfully withheld the prior art from the United States Patent and Trademark Office. This behavior, the District Court concluded, constituted inequitable conduct chargeable to OCP. On January 20, 1998, the District Court awarded Adams costs and fees in the amount of $178,888.51 against OCP.

Adams feared, however, that it would be unable to collect the award. This was an altogether understandable concern; it stemmed from a letter OCP's counsel had sent Adams warning that OCP would be liquidated if exposed to a judgment for fees more than nominal in amount. Adams there-

fore moved to amend its pleading to add Nelson, personally, as a party from whom fees could be collected. In this post-judgment endeavor, Adams reasoned that Nelson was the flesh-and-blood party behind OCP, the person whose conduct in withholding prior art precipitated the fee award, and a person with funds sufficient to satisfy that award. The District Court granted the motion.

Adams' motion, however, sought more than permission to amend the pleading. It sought simultaneously an amended judgment, subjecting Nelson to liability as soon as he was made a party. See Record, Doc. No. 126, p. 1 ("Defendants [*i. e.*, Adams] hereby move the Court . . . for an order granting Defendants leave to amend their third party complaint to name Donald E. Nelson (Nelson) as a third party defendant in his individual capacity, and amending the judgment in this action to include Nelson as an additional party against whom judgment is entered."). In presenting the motion, Adams offered no reason why the judgment should be altered immediately. See *id.*, at 7–8. The motion did contend that an amendment to the judgment was "necessary to prevent manifest injustice," *id.*, at 8 (internal quotation marks omitted), but it did not explain why Nelson, once joined as a party, should not be permitted to state his side of that argument. The District Court seems not to have paused over this question, for it allowed the pleading amendment and altered the judgment at a single stroke. Record, Doc. No. 131. The memorandum explaining the District Court's decision addressed only the propriety of adding Nelson as a party. It did not address the propriety of altering the judgment at the very same time. Record, Doc. No. 130, at 3–7.

The Court of Appeals for the Federal Circuit affirmed the amended judgment against Nelson. *Ohio Cellular Prods. Corp.* v. *Adams USA, Inc.*, 175 F. 3d 1343 (1999). It was "uncommon," the appeals court acknowledged, to add a party after the entry of judgment. *Id.*, at 1348. The court con-

cluded, however, that Nelson had not been prejudiced by the postjudgment joinder. The Federal Circuit based that conclusion on Nelson's failure to show that "anything different or additional would have been done" to stave off the judgment had Nelson been a party, in his individual capacity, from the outset of the litigation. *Id.,* at 1351. The panel, over a vigorous dissent by Judge Newman, was apparently satisfied that adding Nelson as a party and simultaneously amending the judgment to obligate him individually met due process requirements. See *id.,* at 1345, 1349, n. 5.

We granted certiorari, 528 U. S. 1018 (1999). In his request for this Court's review, Nelson did not dispute the portion of the District Court's order that granted Adams leave to amend its pleading to add Nelson as a party against whom costs and fees were sought. Pet. for Cert. 11. What he does challenge, and what is now before us, is the portion of the District Court's order that immediately adjudged Nelson personally liable the moment he was made a party.

## II

### A

The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees. Cf. Fed. Rule Civ. Proc. 1 (Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). Rule 15 sets out the requirements for amended and supplemental pleadings. On that score, the Court of Appeals observed that as long as no undue prejudice is shown, "due process requirements are met if the requirements of Rule 15 are met." 175 F. 3d, at 1349, n. 5. But in the instant case, the requirements of Rule 15 were not met. As Judge Newman recognized in her dissent below, due process does not countenance such swift passage from pleading to judgment in the pleader's favor. See *id.,* at 1352.

The propriety of allowing a pleading alteration depends not only on the state of affairs prior to amendment but also on what happens afterwards. Accordingly, Rule 15 both conveys the circumstances under which leave to amend shall be granted and directs how the litigation will move forward following an amendment. When a court grants leave to amend to add an adverse party after the time for responding to the original pleading has lapsed, the party so added is given "10 days after service of the amended pleading" to plead in response. Fed. Rule Civ. Proc. 15(a). This opportunity to respond, fundamental to due process, is the echo of the opportunity to respond to original pleadings secured by Rule 12. See Fed. Rule Civ. Proc. 12(a)(1). Thus, Rule 15 assumes an amended pleading will be filed and anticipates service of that pleading on the adverse party.

Nelson was never served with an amended pleading. Indeed, no such pleading was ever actually composed and filed in court. Nor, after the amendment naming him as a party, was Nelson accorded 10 days to state his defenses against personal liability for costs and fees. Instead, judgment was entered against him the moment permission to amend the pleading was granted. Appeal after judgment, in the circumstances this case presents, did not provide an adequate opportunity to defend against the imposition of liability. Cf. *American Surety Co.* v. *Baldwin,* 287 U. S. 156 (1932). Adams points to nothing in the record indicating that Nelson affirmatively relinquished his right to respond on the merits of the case belatedly stated against him in his individual capacity. Accordingly, the proceedings did not comply with Rule 15, and neither did they comport with due process. See, *e. g., Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S. 306, 314 (1950) ("'The fundamental requisite of due process of law is the opportunity to be heard.'") (quoting *Grannis* v. *Ordean,* 234 U. S. 385, 394 (1914)).

It is true that Nelson knew as soon as Adams moved to amend the pleading and alter the judgment that he might ultimately be subjected to personal liability. One could

ask, therefore, whether Nelson in fact had a fair chance, before alteration of the judgment, to respond and be heard. Rule 15 and the due process for which it provides, however, demand a more reliable and orderly course. First, as the Rule indicates, pleading in response to an amended complaint is a prerogative of parties, see Fed. Rule Civ. Proc. 15(a), and Nelson was not a party prior to the District Court's ruling on Adams' motion to amend. Second, as Rule 15 further prescribes, the clock on an added party's time to respond does not start running until the new pleading naming that party is served, see *ibid.*, just as the clock on an original party's time to respond does not start running until the original pleading is served, see Fed. Rule Civ. Proc. 12(a)(1)(A). This is not to say that Rule 15 is itself a constitutional requirement. Beyond doubt, however, a prospective party cannot fairly be required to answer an amended pleading not yet permitted, framed, and served.[1]

In support of its holding that Nelson was not prejudiced when added as a party and subjected to judgment, the Federal Circuit relied on its prior decision in *Fromson* v. *Citiplate, Inc.*, 886 F. 2d 1300 (1989). See 175 F. 3d, at 1349–1350, and n. 7. The reliance is puzzling, for the circumstances in *Fromson* were crucially different from those presented here. The plaintiff in *Fromson* prevailed on an infringement claim and subsequently moved to hold the owners of the judgment-proof defendant corporation individually liable. To that extent only, *Fromson* resembles the

---

[1] Even when an amendment relates back to the original date of pleading under Rule 15(c), as Adams contends its amendment does, the relation back cannot, consistently with due process, deny a party all opportunity to be heard in response to the amendment. We also note in this regard that the instant case does not fall under Rule 15(c)(3), which deals with amendments that change the party or the name of the party against whom claims are asserted. That subsection applies only in cases involving "a mistake concerning the identity of the proper party." Fed. Rule Civ. Proc. 15(c)(3)(B). Respondent Adams made no such mistake. It knew of Nelson's role and existence and, until it moved to amend its pleading, chose to assert its claim for costs and fees only against OCP.

instant case.    Notably unlike Adams, however, the plaintiff in *Fromson* had moved *before trial* to add the individual owners as parties, because it suspected from the start that the defendant corporation might not be able to pay.    The District Court denied that motion in reliance on the defendant corporation's false assurances that it was solvent. See 886 F. 2d, at 1301, 1304.    Having been informed before trial that the plaintiffs sought to sue them in their individual capacities, and having acted deliberately to derail such a suit, the owners of the defendant corporation in *Fromson* could hardly assert that another's mistake or choice of whom to sue had compromised their ability to defend.    Their problem, the Federal Circuit aptly observed in its *Fromson* opinion, was "a bed of their own making." *Id.*, at 1304.    Here, in contrast, Adams never sought to sue Nelson individually until after judgment was entered against OCP.    Nor is there any indication that Adams initially sought relief solely against OCP because of some false assurance regarding OCP's solvency.

To summarize, Nelson was never afforded a proper opportunity to respond to the claim against him.    Instead, he was adjudged liable the very first moment his personal liability was legally at issue.    Procedure of this style has been questioned even in systems, real and imaginary, less concerned than ours with the right to due process.[2]

---

[2] A well-known work offers this example:

" 'Herald, read the accusation!' said the King.

On this the White Rabbit blew three blasts on the trumpet, and then unrolled the parchment scroll, and read as follows:

*'The Queen of Hearts, she made some tarts,*
  *All on a summer day:*
*The Knave of Hearts, he stole those tarts,*
  *And took them quite away!'*

'Consider your verdict,' the King said to the jury.

'Not yet, not yet!' the Rabbit interrupted. 'There's a great deal to come before that!' " L. Carroll, Alice in Wonderland and Through the Looking Glass 108 (Messner 1982) (emphasis in original).

B

Adams strongly urges, however, that Nelson waived his objections to the swift process of the District Court. Adams first maintains that Nelson waived arguments based on personal jurisdiction and the absence of service of process by failing to raise them promptly after being added as a party. Brief for Respondents 32–41. Nelson's winning argument, however, is based neither on personal jurisdiction nor on service of process. It rests on his right to have time and opportunity to respond to the claim once Adams gained leave to sue Nelson in his individual capacity, and thereby to reach beyond OCP's corporate till into Nelson's personal pocket. Waiver of arguments based on personal jurisdiction and service of process is therefore beside the point.[3]

In a similar vein, and this time coming closer to the dispositive issue, Adams submits that the Federal Circuit "did not address the 'due process' issues now sought to be presented, . . . because these issues were never raised by Petitioner" before that court. *Id.*, at 47 (emphasis deleted). It is indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts. But this principle does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue. See, *e. g., Beech Aircraft Corp.* v. *Rainey,* 488 U. S. 153, 174–175 (1988). And the general rule

---

[3] We note that a waiver of service of process does not waive a party's right to time in which to respond to the substance of charges that, absent the waiver, would have been included in a served document. It would make little sense to penalize a party's waiver of process, which can help streamline litigation, by barring such a party from stating its side of the case. Indeed, such waiver can sometimes extend a party's time to respond. See Fed. Rule Civ. Proc. 12(a)(1)(B) (rather than having to respond within 20 days of service, a party waiving service may respond at any time within 60 days of the request for waiver).

does not prevent us from declaring what due process requires in this case, for that matter was fairly before the Court of Appeals.

In response to questioning from the appellate bench, Nelson's counsel explained that the core of his client's argument was the fundamental unfairness of imposing judgment without going through the process of litigation our rules of civil procedure prescribe.[4] Both the majority and the dissent in the Federal Circuit understood that an issue before them concerned the process due after Adams' postjudgment motion. See 175 F. 3d, at 1349, n. 5 (majority opinion); *id.*, at 1352 (Newman, J., dissenting). Our resolution of the case as a matter of due process therefore rests on a ground considered and passed upon by the court below.

Beneath Adams' technical and ultimately unavailing arguments about waiver, its essential position in the litigation is reflected in the Federal Circuit's decision: There was sufficient identity between Nelson and OCP to bind Nelson, without further ado, to a judgment already entered against OCP. Nelson was president and sole shareholder of OCP. See *id.*, at 1346. It was Nelson who withheld prior art from the Patent Office. See *id.*, at 1349. He had actual notice that Adams was seeking to collect a fee award from OCP, because he was the "effective controller" of the litigation for OCP and personally participated as a witness at the hearing on whether OCP had engaged in inequitable conduct. See *ibid.*

The Federal Circuit did not conclude that these factors would have justified imposing liability on Nelson by piercing

---

[4] Nelson's counsel stated his position as follows: "[I]t's legally wrong to subject the individual, nonserved, nonsued, nonlitigated-against person to liability for that judgment. Because there are rules. The rules say if you want a judgment against somebody, you sue them, you litigate against them, you get a judgment against them." Tape of Oral Arg. in No. 98–1448 (CA Fed. Feb. 3, 1999).

OCP's corporate veil, see *id.*, at 1349, n. 6, and Adams, for its part, has disavowed reliance on a veil-piercing theory, see Record, Doc. No. 129, at 3 (stating, before the District Court, that "Adams does not request that the Court 'disregard the corporate form'"); Tape of Oral Arg. in No. 98–1448 (CA Fed. Feb. 3, 1999) (expressly stating that this case does not concern piercing the corporate veil). One-person corporations are authorized by law and should not lightly be labeled sham. See, *e. g., Gregory* v. *Helvering*, 293 U. S. 465, 469 (1935) (finding corporation a sham not because it was owned entirely by one person, but because it had "no business or corporate purpose"); *Kirno Hill Corp.* v. *Holt*, 618 F. 2d 982, 985 (CA2 1980) (a corporation's veil may not be pierced merely because it has only one owner). Indeed, where patents are concerned, the one-person corporation may be an altogether appropriate means to permit innovation without exposing inventors to possibly ruinous consequences. The legitimacy of OCP as a corporation, in short, is not at issue in this case.

Instead, the Federal Circuit reasoned that nothing much turned on whether the party opposing Adams' claim for costs and fees was OCP or Nelson. "[N]o basis has been advanced," the panel majority concluded, "to believe anything different or additional would have been done to defend against the allegation of inequitable conduct had Nelson individually already been added as a party or had he been a party from the outset." 175 F. 3d, at 1351. We neither dispute nor endorse the substance of this speculation. We say instead that judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated. As Judge Newman wrote in dissent: "The law, at its most fundamental, does not render judgment simply because a person might have been found liable had he been charged." *Id.*, at 1354.

Our decision surely does not insulate Nelson from liability. As counsel twice represented at oral argument, see Tr. of Oral Arg. 9, 19–20, Nelson seeks only the right to contest on the merits his personal liability for fees originally sought and awarded solely against OCP. That right, we hold, is just what due process affords him.[5]

\* \* \*

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[5] Once the amended pleading is served and Nelson's response is submitted, it will be open to Adams to urge, as Adams prematurely does here, Brief for Respondents 22–28, that issue preclusion (collateral estoppel) bars Nelson from contesting findings made during the litigation between OCP and Adams. See Restatement (Second) of Judgments § 39 (1980). We venture no opinion here about the possible success of such an argument, made at the proper time.