Santiago **HERRERA**, Armando **Andres**, Luciano **Andres**, Jesus **Andres Torres**, Bertoldo **Garcia**, Roberto **Gonzalez**, Jose R. **Nicolas**, Jose de Jesus **Ortiz**, Pedro **Ybarra** and Joseph **Romero**, individually, Plaintiffs,

v.

Jarnail **SINGH** d/b/a Ram Farms, a partnership, Defendant.

No. CS–98–0380–SFN.

United States District Court, E.D. Washington.

Oct. 2, 2000.

Joachim Morrison, Columbia Legal Services, Wenatchee, WA, Roblin John Williamson, Williamson & Williams, Seattle, WA, for Plaintiffs.

Michael A. Arch, Foreman Arch Dodge Volyn & Zimmerman, Wenatchee, WA, for Defendant.

## ORDER

WM. FREMMING NIELSEN, District Judge.

A hearing was held on August 30, 2000, and was continued until September 19, 2000. Roblin Williamson and Joachim Morrison participated on behalf of Plaintiffs; John Holmes participated on behalf of Ram Investments LLC.

The background of this dispute is briefly summarized as follows: Plaintiffs are ten migrant agricultural workers; Defendant Jarnail Singh, doing business as Ram Farms, is or was an agricultural employer with apple orchards in Chelan and Mattawa, Washington. Plaintiffs claimed that Defendant violated several sections of the Migrant and Seasonal Agricultural Workers Protection Act [AWPA], 29 U.S.C. § 1801, *et seq.*, and wrongfully discharged Plaintiffs when Plaintiffs were employed by Defendant during the late summer and early fall of 1997. A jury trial was held in this matter April 17–21, 2000. Plaintiffs prevailed on their claims. After determination of post-trial motions, Plaintiffs re-

covered a total judgment in excess of $160,000.

When Plaintiffs commenced this action on October 2, 1998, the Mattawa and Chelan orchards were owned by Defendant Jarnail Singh and operated as Ram Farms. On April 23, 1999, Ram Investments LLC was formed. On July 7 and July 14, 1999, Jarnail Singh signed quit claim deeds transferring these orchards to Ram Investments LLC. Plaintiffs learned of the LLC's existence during the depositions of Jarnail Singh's sons, David and Calvin, on July 20, 1999. Jarnail Singh is a one percent owner of Ram Investments, and David and Calvin equally split ownership of the remainder. David has taken a more active role in the management of the orchards since the transfer to Ram Investments, but Jarnail also has taken some action on the LLC's behalf. For example, Jarnail has mortgaged other parcels of his real property for the benefit of the LLC. The transfer of assets to Ram Investments admittedly was a gift to David and Calvin.

Plaintiffs bring the instant Motion for Order Regarding Successorship (Ct.Rec. 118), asking that the Court formally find that Plaintiffs may execute their judgment in this matter against Ram Investments LLC. Two separate issues are raised by Plaintiffs' request.

***Jurisdiction over RAM Investments LLC.*** Plaintiffs assert that Ram Investments may be made a party to this matter under to Federal Rule of Civil Procedure 25(c), while Ram Investments argues that this Court has no jurisdiction over it because it never was properly served with a summons and complaint in compliance with Federal Rule of Civil Procedure 4. Counsel for Ram Investments LLC also argues that a new United States Supreme Court decision, *Nelson v. Adams USA*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000), prohibits this Court from granting Plaintiff's Motion.

In *Nelson*, after obtaining a judgment against plaintiff corporation for attorney fees and costs, defendants moved under Fed.R.Civ.P. 15 to amend their complaint to add the corporation's president and sole shareholder as a party. *Nelson*, 120 S.Ct. at 1582. The district court granted the motion and simultaneously found the president personally liable for the judgment. *Id.* The Supreme Court held that such action violated the corporate president's due process rights since he had no opportunity to defend against the imposition of liability. *Id.* at 1584.

The *Nelson* case can be distinguished from the instant case on many grounds. First, in *Nelson*, the party moved pursuant to Fed.R.Civ.P. 15 to amend pleadings to add a new party; in *Herrera*, however, Plaintiffs moved pursuant to Fed.R.Civ.P. 25(c) to substitute parties under a transfer of interest theory. Second, the holding in the *Nelson* case focused on the requirement that, when pleadings are amended to add an adverse party after the time for responding to original pleadings has lapsed, the new party must have an opportunity to respond and be heard. Arguably, Ram Investments LLC has had such an opportunity. The Court has considered motions, briefing, and oral argument from the LLC's counsel. Further, and perhaps most importantly, Plaintiffs here do not seek to impose liability on a third party that has had no opportunity to defend against the claims. Instead, Plaintiffs hope merely to enforce their judgment against the original Defendant's assets and to reach only those assets of Ram Investments LLC that can be traced to Defendant Jarnail Singh doing business as Ram Farms. The original defendant in *Nelson* had neither transferred assets to the party added through amended pleadings nor attempted to protect any assets from the judgment; it merely had insufficient assets to satisfy the judgment. *Id.* at 1585. Because of these reasons, the *Nelson* case is distinguishable from the instant case.

Federal Rule of Civil Procedure 25(c) addresses substitution of parties when a transfer of interest occurs. It provides that "the action may be continued by or against the original party, unless the

court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Fed.R.Civ.P. 25(c). Rule 25 applies to any transfer of interest occurring at any time after an action is brought, including after judgment is entered. *See, e.g., USI Properties v. M.D. Construction Co.,* 186 F.R.D. 255, 260 (D.Puerto Rico 1999) (citations omitted). No action by a party is required under Rule 25(c) when a transfer occurs—the action may be continued against the original party and the judgment will be binding on its successor. 7C CHARLES A. WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1958 (2d ed.1986). A court has discretion to join a transferee by substituting a transferee for a transferor, or by adding the transferee as an additional party. *Id.*

Regardless of how a transferee is joined, personal jurisdiction exists over it. *Id.; Explosives Corp. of America v. Garlam Enterprises Corp.,* 817 F.2d 894, 906 (1st Cir.), *cert. denied* 484 U.S. 925, 108 S.Ct. 286, 98 L.Ed.2d 247 (1987); *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.,* 757 F.2d 1256, 1263–65 (Fed.Cir.1985). Jurisdiction extends to the transferee because the limited determination required in relation to the transferee is whether the transferee is a successor and thus holds property to which the judgment may attach. *Minnesota Mining,* 757 F.2d at 1263–64.

This Court has jurisdiction over Ram Investments due to the transfer of assets from the Defendant to Ram Investments LLC. The second issue debated by the parties is whether Ram Investments is a successor to Jarnail Singh, doing business as Ram Farms, and, if so, to what extent Plaintiffs' judgment may reach the assets of Ram Investments.

*Successorship.* The successorship doctrine is a creation of federal common law. The doctrine frequently is invoked in employment situations, e.g., where a business sells to or merges with another entity. In this context, a transferee is a successor to the transferor and thus liable for a judgment that may be attached to the transferred assets, when the following three elements are shown: (1) the transferee is a bona fide successor, (2) the transferee had notice of the potential liability, and (3) the predecessor is unable to directly provide adequate relief. *Steinbach v. Hubbard,* 51 F.3d 843, 845–46 (9th Cir.1995). A "bona fide successor" finding rests upon the degree of business continuity between the transferor and transferee. *Id.* at 846. Business continuity is established by weighing (1) the similarity of business operations; (2) use of the same physical facilities; (3) use of the same workforce; (4) existence of the same jobs under the same working conditions; (5) presence of the same supervisors; (6) use of the same methods of production; and (7) production of similar products and/or services. *See NLRB v. Jeffries Lithograph Co.,* 752 F.2d 459, 463–64 (9th Cir. 1985).

The successorship doctrine has not been applied to the AWPA.[1] It has, however, been extended "to almost every employment law statute." *Steinbach,* 51 F.3d at 845 (citations omitted). The policy underlying the broad application of the doctrine is that successors must sometimes be held liable "in order to vindicate important statutory policies favoring employment protection." *Id.,citing Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323, 1326–27 (7th Cir.1990). When extending the doctrine to the Fair Labor Standards Act, the *Steinbach* court noted that the purpose of

---

1. The doctrine has been discussed in a few actions containing AWPA claims, but courts either have not ruled on the issue or have discussed successorship in relation to other claims. *See, e.g., Sanchez–Calderon v. Moorhouse Farms,* 995 F.Supp. 1098, 1106–1107 (D.Or.1997) (bypassing successor liability in favor of the joint employer doctrine); *Ramirez v. DeCoster,* 194 F.R.D. 348, 366–68 (D.Maine 2000) (discussing successor liability in relation to claims under § 1981 for mental humiliation and emotional harm).

the FLSA was to protect workers' standards of living through the regulation of working conditions. *Id.* at 845. This purpose is similar to the AWPA's goals of eliminating activities detrimental to migrant and seasonal agricultural workers and "assur[ing] necessary protections for migrant and seasonal agricultural workers." 29 U.S.C. § 1801. More significantly, both the FLSA and the AWPA are remedial statutes addressing employment relationships that are construed broadly to effectuate their purposes. The successorship doctrine rightly is extended to the AWPA.

Next, it must be determined whether Ram Investments should be deemed a successor of Ram Farms. Courts have recognized that a finding of successorship is a factual determination, and "emphasis on the facts of each case as it arises is especially appropriate." *Steinbach,* 51 F.3d at 846, *quoting Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 256, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). Fairness of the determination is a "prime consideration," achieved by weighing the national policies underlying the statute at issue and the interests of the affected parties. *Steinbach,* 51 F.3d at 846, *quoting Criswell v. Delta Air Lines, Inc.,* 868 F.2d 1093, 1094 (9th Cir.1989) *and Howard Johnson,* 417 U.S. at 262–63, n. 9, 94 S.Ct. 2236.

Plaintiffs argue, and Ram Investments does not dispute, that Ram Investments is a bona fide successor to Ram Farms and that Ram Investments had notice of potential liability. Ram Investments focuses on the third prong of the inquiry—that the predecessor is unable to provide adequate relief—and argues both that Jarnail Singh possesses sufficient assets against which the judgment may be executed and that a judgment against Ram Investments would be ineffective.

Ram Investments' argument that Jarnail Singh has sufficient assets separate from Ram Farms against which Plaintiffs can execute this Judgment fails. Ram Investments argues that Defendant has property in Tonasket appraised for $650,000 and mortgaged for $400,000. Ram Investments asserts that this leaves $250,000 equity in the property against which Plaintiffs may execute their judgment. The only evidence presented that the Tonasket property has any equity to which Plaintiffs can attach is Calvin Singh's Declaration stating that "to the best of [his] knowledge," there is $250,000 in "equity" (quotation marks in the Declaration) in the Tonasket property. The documents before the Court, however, evidence a second mortgage against the Tonasket property for $905,000, leaving no equity in the one cited asset. Also, Ram Investments argues that a lien against the proceeds of the year 2000 apple harvest from the Mattawa and Chelan orchards would be futile because U.S. Bank has a perfected security interest against the orchards and their crops in an amount of $905,000. There is no evidence before the Court that the $905,000 promissory note is secured by a perfected security agreement. Rather, the note itself states that it is secured by four deeds of trust on real property, including real property in Okanogan County. This property appears to be the Tonasket property. Two additional facts are note-worthy. First, the $905,000 promissory note and accompanying deeds of trust were executed on April 20, 2000, the day closing arguments occurred in the trial. Second, the $400,000 mortgage and the $905,000 promissory note secured by the Tonasket property list Ram Investments as the beneficiary.

Ram Investments concedes that it is a bona fide successor to Ram Farms and that Ram Investments had notice of potential liability. No evidence supports Ram Investments' contention either that Jarnail Singh could satisfy the judgment on his own, or that a judgment against Ram Investments would be ineffective. Accordingly,

**IT IS ORDERED** that:

1. Plaintiffs' Motion for Order Regarding Successorship, **Ct.Rec.** 118, is **GRANTED.**

2. Pursuant to Fed.R.Civ.P. 25(c), Ram Investments LLC shall be **SUBSTITUTED** as a party in place of Jarnail Singh doing business as Ram Farms.

3. All parties involved shall cooperate to determine which of Ram Investments LLC's assets are subject to the judgment pursuant to this Order.

4. If the parties are unable to reach agreement on which of the LLC's assets will satisfy the judgment, the parties will notify the Court, which will then hold an evidentiary hearing to determine which assets are traceable to Defendant Jarnail Singh doing business as Ram Farms.

The District Court Executive is directed to file this Order and provide copies to counsel.