**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0279-17T4
                    A-0290-17T4

MOHAMED AOUF,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

PYRAMID EXPRESS
CORPORATION and ALPHA
AMERICAN, LLC, f/k/a
AIRPORT SERVICE OF NJ,
LLC, a/k/a PYRAMID EXPRESS,

      Defendants-Respondents/
      Cross-Appellants.

_____

      Submitted February 26, 2019 – Decided May 10, 2019

      Before Judges Rothstadt and Natali.

      On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1579-15.

      Feintuch Porwich & Feintuch, attorneys for appellant/cross-respondent (Donald R. Moran, on the briefs).

Lonny Hirsch, attorney for respondents/cross-appellants.

PER CURIAM

Defendants Pyramid Express Corporation (Pyramid Express) and Alpha American, LLC (Alpha American) appeal, and plaintiff Mohamed Aouf cross-appeals, from the Law Division's August 10, 2017 amended final judgment that dismissed claims against Alpha American, and issued judgment against Pyramid Express and Mohammed Faiad, individually, for unpaid and overtime wages. We have consolidated these appeals for purposes of issuing a single opinion. We affirm in part, vacate in part, and remand the matter to the trial court for further proceedings.

I.

Plaintiff filed a complaint against his employer, defendant Pyramid Express, Inc., alleging it was the owner and operator of a parking facility for shuttle buses in Jersey City. In count one, plaintiff claimed he worked for Pyramid Express as a "watchman or overseer," and was owed $833,480.65 in wages from February 2006 to February 2015. Additionally, in count two, plaintiff claimed Pyramid Express misrepresented his salary, causing him to receive disability payments in an amount less than what he was entitled.

2

On December 2, 2016, plaintiff amended the complaint to replace Pyramid Express, Inc., with Pyramid Express, and to add Alpha American, formerly known as Airport Services of N.J., LLC, as a defendant. Plaintiff alleged that Alpha American was the "co-owner" of the parking facility, or a "successor entity," that owned and operated the business. Defendants filed answers to both complaints in which it denied the allegations and asserted affirmative defenses.

Prior to trial, the parties stipulated to the applicability of the two-year statute of limitations under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a to -56a38 (Act); N.J.S.A. 34:11-56a25.1. As a result, plaintiff's recoverable damages were limited to the two-year period preceding the filing of the complaint, or April 14, 2013.

The parties also stipulated that the minimum wage from 2013 through 2015 was $7.25, $8.25, and $8.38, respectively. In addition, when discussing the triable issues, counsel for Pyramid Express and Alpha American advised the court that Pyramid Express had dissolved operations in the summer of 2015, and its only remaining assets at the time were "small buses which were turned in for junk." However, he added that Pyramid Express had a bus route in New York, which it "transferred" to Alpha American in 2014. Defendants' counsel also stated that Mohammed Faiad was "president of Pyramid Express" and the "sole

3

shareholder of Alpha American."  Plaintiff's counsel contended that in light of Pyramid Express's dissolution, he sought to hold Alpha American liable because as the successor to Pyramid Express it was responsible for its liabilities pursuant to Ramirez v. Amsted Industries, Inc., 86 N.J. 332 (1981).

After the parties agreed to waive their rights to a jury trial, the court conducted a three-day trial in May 2018, in which plaintiff testified, as did his friend, Edwin Amin.  Plaintiff also relied on documentary evidence.  Defendants presented no witnesses.

Plaintiff testified that when he began his employment, he worked every day from 6:00 p.m. until 8:00 a.m.  Toward the end of 2006, however, until February 2015, his work hours increased from 4:00 p.m. to 8:00 a.m., and on occasion he stayed until 10:00 a.m. to await the arrival of his boss, Faiad.  He also stated that on weekends he worked sixty-four hours from Friday at 4:00 p.m. until 8:00 a.m., Monday morning.

Plaintiff's responsibilities included working security, cleaning the garage where the buses parked, collecting rent and insurance from the bus drivers, and washing, maintaining, and starting the buses owned and operated by Pyramid Express.  Plaintiff testified that Faiad initially paid him $300 in cash each week. In 2013, however, his pay increased to $350, and in 2014 and 2015, he was paid

A-0279-17T4

$500 per week. Plaintiff also explained that on occasion he started the independent operators' buses, and the drivers would sometimes tip him two or three dollars, totaling $50 to $100 per week.

Amin stated that he often picked plaintiff up around 3:45 p.m., and drove him to work by 4:00 p.m. each day. As to plaintiff's weekend hours, Amin testified that "on Saturday [and Sunday] [he] usually would bring [plaintiff] food, cigarettes, and water" because plaintiff could not leave work.

Plaintiff testified that in 2014 he noticed that the name displayed on some of the buses, and on the insurance paperwork, changed from Pyramid Express to Alpha American. Although he acknowledged that he was unfamiliar with the details, or corporate structure of Pyramid Express or Alpha American, he believed that Faiad owned both companies.

At the close of plaintiff's case, defendants moved for the involuntary dismissal of Alpha American, as the successor company to Pyramid Express, pursuant to Rule 4:37-2(b). The court dismissed Alpha American, stating that "[t]here is no evidence . . . that . . . Alpha [American] was the purchasing corporation and agreed to assume [Pyramid Express's] debts and liabilities." The court further noted the lack of evidence "that [the transfer] was a consolidation or merger," that "[Alpha American] [was] merely a continuation

of [Pyramid Express]," or that "the transaction was entered into fraudulently in order to escape liability."

The court, however, reconsidered its decision after hearing further oral arguments from counsel, and concluded that because there was a "scintilla" of evidence that plaintiff worked for Alpha American in 2014, dismissal was inappropriate. After defendants rested without calling any witnesses, they renewed their motion, under Rule 4:40-1. In opposing the motion, plaintiff maintained that defendants failed to cooperate in the discovery process, and thus Alpha American should not escape liability for the lack of proof that it was a successor company. The court reserved decision on the motion.

On May 4, 2017, the court issued its oral decision. The court concluded that pursuant to N.J.S.A. 34:11-56a4, plaintiff was "covered by the minimum wage rate" and entitled to overtime payments. The court limited plaintiff's recovery to the two-year period commencing on April 14, 2013, consistent with the parties' stipulation.

The court found credible plaintiff's testimony that he worked sixteen hours a day, Monday to Thursday. The court, however, determined that plaintiff's testimony that he worked sixty-four hours from Friday at 4:00 p.m. to Monday at 8:00 a.m., was not credible. Instead, the court concluded that plaintiff worked

A-0279-17T4

a similar sixteen-hour daily shift on weekends. The court determined seventy-two of his weekly hours qualified as overtime.

Additionally, the court dismissed count two of the complaint because plaintiff failed to provide sufficient evidence to support his claim. The court also dismissed the claims against Alpha American, concluding that plaintiff failed to establish that Pyramid Express "became" Alpha American. The court memorialized its oral decision in a May 23, 2017 final judgment against Pyramid Express, in which it awarded plaintiff $66,496.28 for unpaid and overtime wages for the 2013 to 2015 period, and $25,318.53 in attorney's fees, for a total judgment of $94,252.73.

On June 14, 2017, plaintiff filed a motion to amend the judgment to include Faiad, and for reconsideration of the court's decision dismissing Alpha American. With respect to his motion to amend, plaintiff asserted that pursuant to N.J.S.A. 34:11-4.1(a),[1] Faiad qualified as his employer under the Act, and

---

[1] N.J.S.A. 34:11-4.1(a) defines "employer," under the Act, as:

> any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person in this State. For the purposes of this act the officers of a corporation and any agents

therefore was personally liable for the judgment against Pyramid Express. Plaintiff never served Faiad with the motion, instead he mailed the motion to Pyramid Express's and Alpha American's counsel.

The court heard oral arguments and entered an order on July 21, 2017, in which it denied plaintiff's request for reconsideration of its decision that Alpha American was not the successor to Pyramid Express. The court concluded that the evidence plaintiff presented "fell short [of proving] that Pyramid Express sold or otherwise transferred assets to Alpha American for the [e]xpress reason to avoid this lawsuit." The court noted that plaintiff was unable to describe the relationship between Alpha American and Pyramid Express, and his testimony that they shared the same location and that Faiad was the boss was insufficient to establish Alpha American as the successor to Pyramid Express.

However, the court granted plaintiff's motion to amend the May 23, 2017 judgment to include Faiad as a judgment debtor, and entered judgment against Pyramid Express and Faiad, individually, for $94,252.73. The court concluded that holding Faiad personally liable would not violate his due process rights. The court relied on Richards v. Jefferson County, 517 U.S. 793, 798-99 (1996),

---

having the management of such corporation shall be deemed to be the employers of the employees of the corporation.

and Taylor v. Sturgell, 553 U.S. 880, 895 (2008), and stated that "[a] nonparty may be bound by a judgment [when] . . . she or he was adequately represented by someone with the same interest who was a party if he or she assumed control over the litigation in which the judgment was rendered." The court further explained that "[a] nonparty can be bound by a judgment if he or she is virtually represented by one of the parties."

The court concluded that Faiad's interests were "adequately represented through Pyramid Express's counsel in its defense," because he was present throughout the trial, he spoke with defense counsel numerous times during trial, and plaintiff's testimony that Faiad was his boss was unrefuted. Consistent with its oral decision, the court entered an amended final judgment against Pyramid Express and Faiad on August 10, 2017.

On appeal, Pyramid Express and Alpha American claim that the court's wage and hour calculations are not supported by substantial credible evidence and the court failed to offset the award by the tips plaintiff earned from the independent bus drivers. Further, Pyramid Express and Alpha American assert that the court improperly amended the judgment to name Faiad as a judgment debtor under the Act after trial, and by doing so deprived Faiad of his due process rights. Pyramid Express and Alpha American also maintain it was error

9

for the court to amend the judgment, as plaintiff's motion to amend was barred by the statute of limitations, or alternatively, the doctrine of laches. In plaintiff's cross-appeal, he contends that the court erred in dismissing his claims against Alpha American because "Alpha American . . . [wa]s a continuation of Pyramid[] Express," and is therefore liable for the judgment against Pyramid Express.

We reject plaintiff's cross-appeal and disagree with defendants' claim that the wage and hour calculations were unsupported by the record. We agree, however, with defendants' argument that the court committed error in amending the May 23, 2017 judgment to hold Faiad personally liable.

## II.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, we owe no deference to a trial court's interpretation of the law, and review issues of

A-0279-17T4

law de novo.  State v. Parker, 212 N.J. 269, 278 (2012); Mountain Hill, LLC v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

III.

Applying these standards, we agree with the court that the trial evidence plaintiff presented "fell short" of demonstrating that Alpha American was merely a continuation of Pyramid Express.  Generally, "where one company sells or otherwise transfers all of its assets to another company[,] the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct."  Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 340 (1981) (quoting Jackson v. N.J. Mfrs. Ins. Co., 166 N.J. Super. 448, 454. (App. Div. 1978)).  However, there are four exceptions to this rule, "where[:] (1) the purchaser expressly or impliedly agrees to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuance of the selling corporation[;] or (4) the transaction is entered into fraudulently in order to escape liability for such debts."  Jackson, 166 N.J. Super. at 454.

In determining whether the continuation exception applies to a particular transaction, a court must consider "whether stock was part of the purchase price for the assets; whether there was a continuity of business, control[,] or

management between the two corporations; and whether the alleged successor corporation assumed the debts of the predecessor corporation." Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 73 (3rd Cir. 1993). All of these factors need not be present to demonstrate continuation of the transferor company. Ibid.

Here, plaintiff testified that Faiad was the owner of both Pyramid Express and Alpha American, and that in 2014, the name displayed on some of Pyramid Express's buses changed to Alpha American. However, he also testified that he was unaware of the details of Pyramid Express and Alpha American's business, as these are "things inside the office that [he did not] know about."

As the trial court noted, plaintiff "can only show that Alpha American was located in substantially the same location as Pyramid [Express] . . . [a]nd [that] his boss was . . . Faiad." The court correctly characterized plaintiff's testimony as mere "speculation" about the relationship of the two businesses. Its determination that plaintiff failed to meet his burden to establish that Alpha American was a continuation of Pyramid Express's business is supported by substantial credible evidence in the record.

A-0279-17T4

IV.

Defendants next assert that the court improperly "relied on noncredible and nonexistent testimony to calculate [plaintiff's] weekend hours" and failed to offset the judgment by the amount plaintiff earned in tips from independent bus operators. We disagree.

In general, plaintiffs have the burden of proving damages by a preponderance of the evidence. Caldwell v. Haynes, 136 N.J. 422, 436 (1994). The trial court will "hear[] the case, see[] and observe[] the witnesses, [and] hear[] them testify," and then "evaluat[e] the veracity of witnesses.'" Cesare, 154 N.J. at 412 (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)). The court "is not bound to believe the testimony of any witness, in whole or in part." State v. Muhammad, 182 N.J. 551, 577 (2005) (quoting State v. Bentley Bootery, Inc., 128 N.J.L. 555, 561 (1942)). Rather, factfinders "may reject what in their conscientious judgment ought to be rejected and accept that which they believe to be credible." Ibid. (quoting Bentley Bootery, Inc., 128 N.J.L. at 561).

Here, the court noted that plaintiff's testimony regarding his hours from Monday through Thursday was unrefuted, and it accepted as credible that he worked from 4:00 p.m. to 8:00 a.m. With respect to plaintiff's weekend hours, however, the court rejected his testimony that he worked from 4:00 p.m. on

13

Friday until 8:00 a.m. on Monday. Instead, based on the testimony that it did credit, the court concluded plaintiff worked sixteen hours a day, seven days a week. We note that it was unrebutted that plaintiff worked on weekends, as confirmed by Amin's testimony that he drove plaintiff to work and brought him supplies on weekends. As the court was entitled to accept as credible part of plaintiff's testimony, see Muhammad, 182 N.J. at 577, we conclude the court's findings that plaintiff's weekend hours were likely the same as his weekday hours was supported by adequate, substantial, credible evidence.

With respect to Pyramid Express and Alpha American's assertion that the court erroneously failed to offset plaintiff's damages with the payments he earned from independent bus operators, we note that defendants fail to cite to any authority, statutory or otherwise, to support their entitlement to a credit. We conclude the court properly declined to offset the judgment based on plaintiff's receipt of tips from third parties, particularly in light of the evidence that plaintiff was discharging his work responsibilities for Pyramid Express when he received those tips.

V.

We agree, however, with Pyramid Express and Alpha American's argument that the court erroneously amended the May 23, 2017 judgment to hold

Faiad personally liable. The fundamental requirements of due process are "an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995). As such, "[t]he critical components . . . are adequate notice, opportunity for a fair hearing[,] and availability of appropriate review." Schneider v. E. Orange, 196 N.J. Super. 587, 595 (App. Div. 1984). "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." In re Heller, 73 N.J. 292, 310 (1977) (quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972)).

Stated otherwise, "[t]he right to a hearing includes not only the right to present evidence[,] but also a reasonable opportunity to know what claims must be defended against and what consequences are proposed." Id. at 311 (quoting Dep't of Revenue v. Jamb Discount, 301 N.E.2d 23, 27 (Ill. App. Ct. 1973)). "Due process is not a fixed concept, however, but a flexible one that depends on the particular circumstances." Doe, 142 N.J. at 106 (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990)). Generally, without being made a party by service of process, "one is not bound by a judgment in personam in a litigation." Hansberry v. Lee, 311 U.S. 32, 40 (1940).

Fundamentally, "a corporation is 'an entity wholly separate and distinct from the individuals who compose and control it.'" N.J. Dep't of Envtl. Prot. v.

<u>Dimant</u>, 418 N.J. Super. 530, 546 (App. Div. 2011) (quoting <u>Yacker v. Weiner</u>, 109 N.J. Super. 351, 356 (Ch. Div. 1970)). "[A] primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." <u>Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.</u>, 195 N.J. 457, 472 (2008) (quoting <u>State, Dep't of Envtl. Prot. v. Ventron Corp.</u>, 94 N.J. 473, 500 (1983)). We acknowledge, however, that "[w]here the corporate form is used by individuals for the purpose of evading the law, or for the perpetuation of fraud, the courts will not permit the legal entity to be interposed so as to defeat justice." <u>Karo Marketing Corp., Inc. v. Playdrome America</u>, 331 N.J. Super. 430, 442 (2000) (quoting <u>Trachman v. Trugman</u>, 117 N.J. Eq. 167, 170 (Ch. Div. 1934)).

In <u>Nelson v. Adams USA, Inc.</u>, 529 U.S. 460 (2000), the United States Supreme Court held that the District Court's decision to amend a judgment after trial to hold the president and sole shareholder of a corporation personally liable for a judgment against the company, without affording the president an opportunity to contest his personal liability, was a violation of his due process rights. The Court noted that "nothing in the record indicat[ed] that [the president] affirmatively relinquished his right to respond on the merits of the case belatedly stated against him in his individual capacity" and a post-judgment

16

appeal "did not provide an adequate opportunity to defend against the imposition of [personal] liability." Id. at 466.

In reversing the amended judgment against the corporation's president, the Court held that the president:

> was never afforded a proper opportunity to respond to the claim against him. Instead, he was adjudged liable the very first moment his personal liability was legally at issue. Procedure of this style has been questioned even in systems, real and imaginary, less concerned than ours with the right to due process.
>
> [Id. at 468.]

Here, as in Nelson, Faiad's personal liability was never litigated at trial. Faiad was never served with the complaint, nor provided any notice that he may be held personally liable for any judgment against Pyramid Express or Alpha American. He did not have the opportunity to file pleadings, conduct discovery, or prepare a defense. In fact, based on the trial proceedings, he reasonably understood that his personal liability was not at issue. Indeed, when plaintiff amended the complaint in December 2016, he did so to add Alpha American, the alleged successor to Pyramid Express, not to name Faiad, or to allege that he was Faiad's employer under the Act. In addition, when plaintiff moved to amend the judgment, he failed to even serve Faiad with the motion papers, instead electing to serve counsel for Pyramid Express and Alpha American.

Further, although Pyramid Express and Alpha American waived their right to a jury trial, by amending the judgment after trial, Faiad was deprived of his opportunity to request a jury trial, which he was expressly entitled to under N.J.S.A. 34:11-66. Under these facts, we conclude the court's decision to amend the judgment to hold Faiad personally liable violated his due process rights.

Plaintiff's reliance on Bussell v. DeWalt Prods. Corp., 259 N.J. Super. 499 (App. Div. 1992) to support his contention that Faiad's due process rights were protected because he was "cognizant of the lawsuit at all stages" is misplaced. In Bussell, after post-judgment proceedings, the trial court entered judgment against Black & Decker (U.S.), Inc., as the successor corporation of DeWalt Products Corporation. Noting that an individual not named as a party may be held liable for the judgment "if he participated in the suit or had an opportunity to be heard," id. at 510-11, we concluded that Black & Decker, although not named in the complaint, "was effectively represented throughout litigation." Id. at 510.

In reaching this conclusion, the court found significant that service of the complaint was accepted by the controller of Black & Decker's DeWalt Division, that defense counsel, who later represented Black & Decker, was hired by Black & Decker's insurance carrier, and that Black & Decker admittedly participated

18

in the defense of the claim against DeWalt due to its "potential exposure." Id. at 509-10. The court also noted that Black & Decker indicated to the plaintiff that it conducted discovery and that its insurance carrier had a policy covering the claim. Id. at 510.

Here, however, Faiad, who was not named in the complaint, was not provided any notice prior to trial that plaintiff would seek to hold him personally liable as plaintiff's employer or for Pyramid Express's liability. While Black & Decker admitted to the court that it participated in the defense because of its "potential exposure," there is nothing in the record to indicate that Faiad had any idea that he might face personal liability, or that by appearing at trial he would be waiving his right to a jury trial, and substantive defenses to plaintiff's claim.

Similarly, neither the Taylor nor Richards decisions, relied upon by the trial court and plaintiff on appeal, support imposing personal liability against Faiad. In both cases, the Supreme Court discussed the preclusive effect of judgments under res judicata principles. Taylor, 553 U.S. 880, 895 (discussing the "'virtual representation' exception to the rule against nonparty preclusion"); Richards, 517 U.S. 793, 801-02 (concluding there was not "adequate representation" to permit the application of res judicata). Rather than rely on issue or claim preclusion to bind Faiad to the Pyramid Express judgment, the

19

trial court amended the judgment to include Faiad. Even were we to consider those claim preclusion principles, however, we are convinced they have no application here.

As to the court's reliance on Pyramid Express's purported "virtual representation" of Faiad, the Supreme Court in Taylor concluded a "broad theory of virtual representation," was at odds with the "general rule that a litigant is not bound by a judgment to which she was not a party." 553 U.S. at 898. The Supreme Court noted that the concept had become a source of "disagreement among the Circuits," id. at 891, and held that the doctrine should be rejected because it "authorize[d] preclusion based on identity of interests and some kind of relationship between the parties and non-parties, shorn of . . . procedural protections . . . ." Id. at 901.

Further, the Taylor court also explained the concept of "adequate representation," typically applied in class actions, and defined it to include circumstances where "(1) [t]he interests of the nonparty and her representative are aligned . . . [;] (2) either the party understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty . . . [;] [and] (3) notice of the original suit to the persons alleged to have been represented . . . ." Id. at 900 (citations omitted) (first citing

20

<u>Hansberry</u>, 311 U.S. at 43; then citing <u>Richards</u>, 517 U.S. at 801-02). These circumstances are not present here. Pyramid Express was defending its corporate interests, not Faiad's potential personal liability or his role as plaintiff's employer. Accordingly, their interests were not aligned. Further, there is nothing in the record to indicate that Pyramid Express and Alpha American understood that they were representing Faiad in his personal capacity, and the court did not "take care to protect" Faiad's due process rights.

Finally, plaintiff maintains that because Faiad qualifies as his employer, as defined in N.J.S.A. 34:11-4.1(a), he should be held personally liable for the judgment under the Act. We disagree.

In support of this argument, plaintiff relies on the court's holding in <u>Mulford v. Computer Leasing</u>, 334 N.J. Super. 385, 393-94 (Law Div. 1999), in which the court concluded:

> [t]he [Act] imposes personal liability on the managing officers of a corporation by deeming them the employers of the employees of the corporation. N.J.S.A. 34:11-4.1. . . . Employees are the obvious special beneficiaries of the statute; and to allow the civil action will plainly further its purpose. The statute thus impliedly confers on employees a private right of action in court against employers (as defined in N.J.S.A. 34:11-4.1) to protect and enforce their rights thereunder . . . .

21

While Mulford establishes a private right of action against employers, nothing in that case, or N.J.S.A. 34:11-4.1(a), vitiates a party's fundamental due process rights. Thus, while Faiad may have qualified as an employer under the Act, plaintiff was still required to name him in a properly served complaint, rather than amending the judgment to effectively pierce Pyramid Express's corporate veil after trial without any attendant proofs.

In light of our conclusion that the court violated Faiad's due process rights by amending the May 23, 2017 judgment to hold him personally liable, we need not address defendants' assertion that plaintiff's motion to amend the May 23, 2017 judgment was barred by the statute of limitations, or alternatively, the doctrine of laches.

To the extent we have not specifically addressed any of the parties' remaining arguments, we conclude they are of insufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Accordingly, we vacate the August 10, 2017 amended final judgment and remand the matter for the limited purpose of reinstating the May 23, 2017 judgment against Pyramid Express.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

22

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-0279-17T4