**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2024
_____

STONY BATTERY RD PROPERTY OWNER LLC; STONY CORP. BLVD. LLC,

v.

QVC, INC.,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:23-cv-00518)
District Judge: Honorable John M. Gallagher
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 2, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES, *Circuit Judges*.

(Opinion filed: May 12, 2025)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

MONTGOMERY-REEVES, *Circuit Judge*.

The parties to this appeal entered a transaction and signed a covenant not to sue. But things went awry, so Stony Battery[1] sued QVC, Inc. ("QVC") and QVC countersued for breach of the covenant. Relevant to this appeal, the District Court held that Stony Battery did not breach the covenant by filing its complaint, and we agree that the covenant did not bar Stony Battery's suit. Thus, we will affirm the judgment of the District Court.

## I.  BACKGROUND

QVC and Stony Battery are parties to the Agreement of Sale (the "Sale Agreement") through which QVC sold Stony Battery a warehouse and the equipment within it.[2] The Sale Agreement also contained a release and covenant not to sue. The covenant barred Stony Battery from suing QVC if Stony Battery's claims were connected "in any way . . . with the Assets" included in the Sale Agreement. App. 76. But the covenant also contained a carveout, which permitted suits "for any breach of [QVC's] obligations set forth in th[e Sale] Agreement." *Id.* After signing the Sale Agreement,

---

[1] This opinion refers collectively to Appellees Stony Battery RD Property Owner LLC and Stony Corp. Blvd. LLC as "Stony Battery."

[2] The Sale Agreement dated November 6, 2019, was between QVC and an entity called 1000 Stoney Battery Road, LLC. Later, those parties and Stony Battery—that is, the Plaintiffs-Appellees in this action—entered into a separate agreement that essentially substituted Stony Battery for 1000 Stoney Battery Road, LLC as the buyer of the assets at the heart of this lawsuit and made Stony Battery party to the Sale Agreement for that purpose. For simplicity, we reference in this opinion only the November 6, 2019 Sale Agreement, and refer to Stony Battery and QVC as the contracting parties.

2

QVC and Stony Battery agreed to a temporary leaseback arrangement (the "Lease"), through which Stony Battery leased to QVC the warehouse and equipment.

To handle the warehouse's inventory, QVC relied on equipment called Materials Handling Equipment ("MHE"), which QVC included in the Sale Agreement. To operate, the MHE required specialized warehouse-management software. QVC ran the MHE on software called WMS21, while Stony Battery used another kind of software, called WMi, at another of its facilities. Stony Battery initially hoped to use WMi on the MHE it purchased from QVC. But as time went on, Stony Battery became interested in running QVC's WMS21 software, apparently because Stony Battery's plan to implement WMi became delayed. Stony Battery could not run WMS21 without QVC's permission, so Stony Battery and QVC discussed a potential licensing arrangement. Ultimately, the parties did not reach an agreement. At the end of the Lease, QVC vacated the warehouse and left Stony Battery the MHE, but wiped WMS21 from the warehouse's computer systems. Without any warehouse-management software, the MHE was functionally inoperable, though in good physical condition.

Stony Battery then sued QVC for breach of contract and several related equitable claims, on the ground that the MHE it had contracted for was inoperable. QVC answered and counterclaimed for breach of contract, alleging that Stony Battery's suit violated the Sale Agreement's covenant not to sue. Following discovery, Stony Battery moved for summary judgment on QVC's counterclaim. The District Court granted Stony Battery's motion, holding (as relevant here) that the covenant's carveout permitting actions "for any breach of [QVC's] obligations set forth in [the Sale] Agreement," App. 76, allowed

3

Stony Battery to bring its suit, App. 16.  QVC timely appealed.

## II.    DISCUSSION[3]

On appeal, QVC argues that the covenant's carveout does not permit Stony Battery's claims because the carveout applies only to "an *actual* breach of the Sale[] Agreement," and Stony Battery's claims were not meritorious.[4]  Opening Br. 23 (emphasis added).  We disagree with QVC's interpretation of the covenant.[5]

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.  We review *de novo* a District Court's disposition of a motion for summary judgment, "meaning we review anew the District Court's summary judgment decisions, applying the same standard it must apply." *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021).  "To prevail on a motion for summary judgment, the moving party must demonstrate 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)).  Any "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and alterations omitted).

[4] Stony Battery argues that QVC failed to preserve its appellate arguments because "QVC's briefing before the District Court lack[ed] the detail necessary" to do so.  Answering Br. 4.  That argument lacks merit.  "[P]reserving an argument 'does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue.'" *In re Bestwall LLC*, 47 F.4th 233, 242 (3d Cir. 2022) (quoting *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000)).  The "substance of the issue" in the District Court was whether the covenant not to sue barred, as a matter of law, Stony Battery's lawsuit, and thus whether summary judgment for QVC was appropriate.  The "District Court and the parties" were "on notice" of that claim, which is the "same . . . theory [QVC] pursues before us," even if, in light of the District Court's decision, QVC has developed its arguments more extensively on appeal. *Id.* at 242–43.

[5] The District Court also held that the non-suit covenant did not encompass Stony Battery's claims because the covenant applied only to suits "over the *condition* of the assets purchased" through the Sale Agreement, while Stony Battery's complaint sought "to enforce the *transfer* of assets allegedly contracted for."  App. 17 (emphasis added).

Under Pennsylvania law, when "contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties." *Pennsylvania ex rel. Kane v. UPMC*, 129 A.3d 441, 463 (Pa. 2015). "A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* (internal quotation marks and citation omitted). The carveout to the Sale Agreement's covenant not to sue is unambiguous. Stony Battery expressly did not give up the ability "to sue [QVC] for *any* breach of [QVC's] obligations set forth in th[e] [Sale] Agreement." App. 76 (emphasis added). By its terms, the carveout is not limited to some claims for breach of the Sale Agreement but not others; the word "any" sweeps in every potential claim for a breach of the Sale Agreement, regardless of form or merit. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976)); *Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020); *Any*, Merriam-Webster, https://www.merriam-webster.com/dictionary/any (last visited May 2, 2025) (defining "any" as "used to indicate one selected without restriction"). So, if Stony Battery claims that QVC breached an obligation under the Sale Agreement, the carveout allows Stony Battery to bring the claim without breaching the covenant. That is "the

---

We need not address QVC's challenges to this holding because we affirm on other grounds.

5

plain meaning of the language expressed" in the parties' bargain. *Steuart v. McChesney*, 444 A.2d 659, 662 (Pa. 1982).

Stony Battery's complaint alleged that QVC's failure to deliver the MHE complete with warehouse-management software breached QVC's express and implied obligations under the Sale Agreement.[6] Those claims are excluded from the covenant not to sue. And alleging them does not breach the Sale Agreement.

QVC points out that Stony Battery's claims ultimately proved unsuccessful. According to QVC, this means that the District Court's reading of the carveout makes the non-suit covenant superfluous and leads to absurd results that Pennsylvania law disfavors because it allows Stony Battery to file "non-meritorious" and "frivolous claim[s]". Opening Br. 24. Not so. The carveout applies only to breaches of the Sale Agreement— other claims remain barred—so the District Court's reading would not cause the carveout to swallow the covenant. Nor does the carveout absurdly permit "frivolous claim[s]." *Id.* Even with no covenant at all, Stony Battery would, like any other litigant, have been subject to sanctions for filing a frivolous suit. *See* Fed. R. Civ. P. 11. To the extent that

---

[6] Stony Battery also asserted claims for promissory estoppel, unjust enrichment, and conversion—which, unlike the breach-of-contract and breach-of-implied-covenant claims, do not expressly reference the Sale Agreement. QVC has not argued that there is any distinction between the claims for purposes of the covenant not to sue or the carveout; instead, it has argued that the covenant only applies to meritorious claims for breach of the Sale Agreement. *See* Opening Br. 23 ("[The carveout] permits Stony Battery to sue only for an actual breach of the Sale[] Agreement."). In any event, Stony Battery's claims for promissory estoppel, unjust enrichment, and conversion stem from its fundamental argument that it was owed a contractual obligation by QVC deriving from the Sale Agreement.

QVC wanted to further limit Stony Battery's freedom to sue only to claims adjudicated successful on the merits, or to some otherwise-defined category of meritorious claims, QVC and its counsel could have negotiated such language. But QVC did not. Instead, the parties excepted "any" claim that QVC breached the Sale Agreement. App. 76.

Where, as here, a "contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention." *Steuart*, 444 A.2d at 662 (quotation omitted). We therefore "decline to read an ambiguity into an agreement that could easily have been addressed by [QVC] within its express terms." *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1261 (Pa. 2015); *see also M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) (noting "the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties"). Because the Sale Agreement's covenant not to sue unambiguously carved out claims for any breaches of the Sale Agreement, Stony Battery's claims, though unsuccessful, were permitted, and the District Court properly granted summary judgment for Stony Battery on QVC's counterclaim.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

7