IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PHILIP ANTHONY PIZELO, WILLIAM M. SWAYNE II, WILLIAM M. SWAYNE III, and WMS FINANCIAL PLANNERS, INC., | No. 77448-4-I DIVISION ONE |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| MARILYN HEINEMANN AND CHAKORN PHISUTHIKUL, | |
| Respondents. | FILED: June 3, 2019 |

CHUN, J. — Philip Anthony Pizelo, William Swayne II, William Swayne III, and WMS Financial Planners, Inc. (Appellants) seek review of the trial court's order confirming a Financial Industry Regulatory Authority (FINRA) arbitration award against them. Appellants contend the arbitration panel exceeded its powers by granting claimants' motion at the evidentiary hearing to amend their claim by identifying unnamed "John Doe" defendants as Pizelo, Swayne II, and WMS. For the reasons discussed in this opinion, we affirm.

## BACKGROUND

In 2008, husband and wife, Marilyn Heinemann and Chakorn Phisuthikul (Investors) invested in two tenant-in-common real estate interests through registered broker-dealer Pacific West Securities, Inc. (PacWest). William M. Swayne III, a registered representative with PacWest, marketed the investment

opportunity. The securities investment account form contained an arbitration provision that provided in pertinent part:

> Customer and Pacific West Securities, Inc., agree that if any dispute arises between them or their agents, the dispute shall be settled by arbitration pursuant to the Code of Arbitration Procedure administered by the National Association of Securities Dealers, Inc. The award of the arbitrator(s) shall be final and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.[1]

The investments did not perform well. On May 23, 2013, Investors initiated an arbitration before FINRA asserting claims against PacWest, Swayne III, and "John Does" for negligence, misrepresentations and material omissions, and control person liability and failure to supervise. The claim alleged that the "John Does" were control persons of PacWest who "will be identified through discovery."

A three-member FINRA panel conducted an evidentiary hearing from June 27 through July 1, 2016. During the evidentiary hearing, Swayne III testified under oath that WMS was a d/b/a of himself and that his father, Swayne II, was CEO of WMS. Upon learning this information, Investors orally moved to name Pizelo, Swayne II, and WMS as the "John Does" in the claim. The panel granted the motion at the evidentiary hearing.

On July 20, 2016, the Panel issued a written ruling on the motion:

> The Statement of Claim in this matter named but did not identify John Doe respondents. By identifying three such respondents at hearing - Anthony Pizelo, William Madison Swayne II and WMS Securities, Inc. - Claimant initiated and Respondent William Madison Swain [sic]

---

[1] In 2007, the National Association of Securities Dealers (NASD) became known as FINRA. FINRA arbitrations are governed by the FINRA "Code of Arbitration Procedure for Customer Disputes" (Code).

III answered, de facto, a Rule 12309(c) Motion to Amend Pleadings to Add Parties. This Motion is granted with respect to these three individuals.

On August 3, 2016, Investors submitted a written Statement of Claim to Conform to the Evidence (SOCCE) pursuant to FINRA Rule 12309(b) identifying the "John Does" as Pizelo, Swayne II, and WMS. In a letter responding to the Panel's July 20, 2016 order, Investors asserted that their motion did not seek to add new parties to the claim pursuant to FINRA Rule 12309(c), but rather to amend the claim pursuant to FINRA Rule 12309(b). Pizelo, Swayne II, and WMS subsequently filed objections, responses and replies in opposition to the SOCCE with the Panel and also with the Director of FINRA. On September 14, 2016, the director of FINRA ruled that the matter was within the purview of the Panel to decide.

On October 7, 2016, the Panel issued an order re-confirming its ruling at the evidentiary hearing granting Investors' FINRA Rule 12309(b) motion to amend the SOCCE. No party moved to reopen the hearing.

On November 16, 2016, the Panel issued a final arbitration award finding Pizelo, PacWest, Swayne II, Swayne III, and WMS jointly and severally liable to Investors for $1,134,911 in compensatory damages, $65,000 in attorney fees, and $5,500 in hearing fees. Regarding the dispute concerning Investors' motion to amend the SOCCE, the award specified:

> None of the Newly Identified Respondents filed with the FINRA Office of Dispute Resolution a properly executed Submission Agreement. The Panel has determined that Swayne II and Pizelo are required to submit to arbitration pursuant to the Code and, being identified at the hearing as control persons, are bound by the determination of the panel on all issues submitted. WMS is not a member of FINRA. The

Panel has determined that WMS is required to submit to arbitration and, being identified at the hearing as a control person, is bound by the determination of the Panel on all issues submitted.

The Newly Identified Respondents did not appear at the evidentiary hearing, whether by their choice to not appear or by their unknown named identity as control persons prior to the hearing. Upon evidence produced during the hearing, the panel determined that the Newly Identified Respondents had sufficient notice of the hearing, and that arbitration of the matter would proceed without the Newly Identified Respondents present.

On December 14, 2016, Pizelo filed a petition in superior court to vacate the arbitration award on the basis that it violated the Washington Uniform Arbitration Act (WAA) and the FINRA rules. On December 16, 2016, Swayne II, Swayne III, and WMS filed a petition to vacate the award on similar grounds.

On February 2, 2017, Investors moved to dismiss pursuant to CR 12(b)(6), arguing that the petitions failed to reference the Federal Arbitration Act (FAA). On February 14, 2017, Pizelo filed a motion to vacate the arbitration award, citing the WAA, the FAA, and FINRA rules. On February 16, 2016, Swayne II, Swayne III, and WMS filed motions to vacate the award.

On February 27, 2017, the court granted Appellants' motion for joinder and stayed their motions to vacate pending a ruling on Investors' motion to dismiss. On March 13, 2017, Appellants filed a joint opposition to Investors' motion to dismiss. On March 27, 2017, Appellants filed an amended joint petition to vacate the arbitration award, which Investors opposed. On April 17, 2017, the trial court ruled that Investors' motion to dismiss was moot, and ordered them to answer Appellants' motion to vacate. Investors filed their answer to the amended petition on April 21, 2017. On June 5, 2017, Investors filed a CR 12(c) motion for

4

judgment on the pleadings, which the trial court denied.

On August 17, 2017, Investors moved to confirm the arbitration award. They also filed a response to Appellants' motion to vacate on August 23, 2017. The trial court conducted a hearing on August 25, 2017. On September 6, 2017, the trial court denied Appellants' motion to vacate and granted Investors' motion to confirm the arbitration award. This appeal followed.

## ANALYSIS

Appellants contend the Panel exceeded its powers in granting Investors' motion to identify the "John Does" as Pizelo, Swayne II, and WMS. Specifically, Appellants contend the trial court erred in refusing to vacate the arbitration award because (1) the Panel violated due process protections and FINRA rules, (2) the Panel violated state and federal principles of "John Doe" pleading, and (3) there was no agreement to arbitrate before FINRA.

### 1. Federal Law Applies

As a preliminary matter, we address the question of applicable law. Appellants argue the trial court improperly ruled that the FAA preempted the WAA in this case. They assert that the FAA and WAA both apply, and they rely on both throughout their brief. "Determination of whether the FAA preempts a state statute that otherwise applies to a transaction generally requires a two-part analysis in which we consider (1) whether the FAA applies to the transaction and, if so, (2) whether the state statute conflicts with the FAA." Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (2009). "Conflict preemption is found where it is impossible to comply with both state and federal law or where

5

state law 'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" McKee v. AT&T Corp., 164 Wn.2d 372, 387, 191 P.3d 845 (2008) (quoting Silkwood v. Kerr–McGee Corp., 464 U.S. 238, 248, 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984)).

Appellants are correct that the FAA preempts state arbitration acts only to the extent they conflict. Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476-77, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1988). But they provide no analysis, argument, or citations in support of their conclusory assertion that the FAA and WAA do not conflict on any point relevant to this case. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2013); RAP 10.3(a)(6) (briefs must include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."). Because Appellants fail to conduct a conflict preemption analysis, we need not address their claim that both laws apply. Accordingly, we analyze their challenge through the lens of the FAA only.

The FAA gives "substan[ce to] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Hall Street Assocs. LLC v. Mattel, Inc., 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). Section 10(a) of the FAA permits vacatur of an arbitration award only under four narrow circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Arbitrators "exceed their powers" under 9 U.S.C. § 10(a)(4) when the award is "completely irrational" or exhibits a "manifest disregard of law." Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009). To establish manifest disregard, "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." Biller v. Toyota Motor Corp., 668 F.3d 655, 665 (9th Cir. 2012) (internal quotation marks and citations omitted). "It is not enough for petitioners to show that the panel committed an error—or even a serious error." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] [their] own brand of industrial justice' that [their] decision may be unenforceable." Stolt-Nielsen S.A., 559 U.S. at 671 (quoting Major League Baseball Players Assn. v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)).

7

Although we review the trial court's conclusions de novo, we remain "exceedingly deferential" to the arbitrator's decisions. Kashner Davidson Securities Corp. v. Mscisz, 531 F.3d 68, 74 (1st Cir. 2008). "Broad judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, [i.e., speed and informality,] rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." Kyocera Corp. v. Prudential–Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003). "Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987). "The bottom line is we will confirm the arbitrator's award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [their] authority." McGrann v. First Albany Corp., 424 F.3d 743, 748 (8th Cir. 2005) (internal quotation marks and citation omitted).

## 2. Notice and Opportunity to be Heard

Appellants argue the Panel exceeded its power and acted in manifest disregard of the law by granting Investors' motion at the evidentiary hearing to amend their SOCCE by identifying the "John Does" as Pizelo, Swayne II, and WMS. They contend this decision violated the FINRA Rules and basic principles of due process because they did not receive notice prior to the evidentiary hearing and were thereby deprived of an opportunity to be heard. We disagree.

8

Here, the Investors moved to amend their SOCCE to add the newly identified respondents pursuant to FINRA Rule 12309(b). Under that rule, "[o]nce a panel has been appointed, a party may only amend a pleading if the panel grants a motion to amend in accordance with Rule 12503. Motions to amend a pleading must include a copy of the proposed amended pleading." And FINRA Rule 12503(a)(4) requires that such motions be "accompanied by copies of the proposed amended pleading when the motion is served on the other parties and filed with the Director."

Appellants argue that Investors' motion at the evidentiary hearing was procedurally improper because the newly identified respondents were not contemporaneously served in writing pursuant to FINRA Rule 12309(b) and 12503. They contend the Panel acted in manifest disregard of the law because no FINRA rules allow for a post-evidentiary oral motion to add parties. Under the circumstances presented here, we are not persuaded that the Panel exceeded its power or acted in manifest disregard of the law.

FINRA Rule 12409 provides,

The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties.

"'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)).

9

The Panel expressly determined that "upon evidence produced during the hearing," Pizelo, Swayne II, and WMS "had sufficient notice." The Panel was not required to explain its rationale for this decision, as the parties did not request an "explained decision" pursuant to FINRA Rule 12904(g). We note, however, that the record shows Pizelo was former CEO of PacWest, and that Swayne III testified under oath at the evidentiary hearing that WMS was a d/b/a of himself and that his father, Swayne II, was CEO of WMS. Upon learning this information at the hearing, Investors immediately moved to identify the "John Does" in their claim. Because the newly identified parties were not present at the evidentiary hearing, strict procedural compliance with FINRA Rules 12309(b) and 12503 was not possible. We cannot say this decision was irrational or made in manifest disregard of the law. Nor can we say the trial court erred in concluding "[a]ll parties knew what was going on at the FINRA hearings and that control persons were included."

Appellants, relying primarily on Kashner, argue that the award must be vacated because the Panel acted in disregard of FINRA Rules. In Kashner, the court held that an NASD arbitration panel disregarded the unambiguous language of the applicable NASD rules when it dismissed a case with prejudice without first demonstrating that sanctions short of dismissal were effective. Kashner, 531 F.3d at 76-78. Such "misapplication of the clear language of the rule [could] only be deemed an intentional and willful disregard of the law." Kashner, 531 F.3d at 70. Here, in contrast, the Panel reasonably exercised its

discretion to interpret the FINRA Rules in accordance with the circumstances at hand.

Appellants further contend that post-evidentiary amendments that add new parties in a lawsuit violate due process when liability is imposed without providing the new parties with an opportunity to be heard. However, the record shows that Appellants' post-hearing submissions to the Panel and FINRA raised in detail their concerns regarding due process, violation of FINRA Rules, conflict of interest, control person liability, and prejudice. The Panel's award expressly stated that the determination was made "[a]fter considering the pleadings, the testimony and evidence presented at the hearing, and the post hearing submissions."

Petitioners further assert that the Panel failed to follow FINRA Rule 12609, which allows the Panel to "reopen the record on its own initiative or upon motion of any party at any time before the award is rendered, unless prohibited by applicable law." They assert that the Panel failed to offer this option to Appellants, choosing instead to proceed in bad faith. But FINRA Rule 12609 by its express terms allows a party to move to reopen the record. Appellants could have requested that the Panel reopen the evidentiary hearing pursuant to this rule, but they did not.

Appellants cite Nelson v. Adams USA, Inc., 529 U.S. 460, 466-68, 120 S. Ct. 1579, 146 L. Ed. 2d 530 (2000) in support of their position. Nelson is readily distinguishable. In Nelson, after acquiring a judgment against a plaintiff corporation, the district court permitted defendants to use Federal Rule of Civil

Procedure 15 to add the corporation's president as a party. Nelson, 529 U.S. at 460. The United States Supreme Court held that this action violated due process because the president did not have the opportunity to defend himself prior to entry of the judgment against him. Nelson, 529 U.S. at 460. Here, in contrast, the newly identified parties were named months before entry of the award. And, as described above, they had an opportunity to respond to the claims.

Appellants have not shown that the Panel exceeded its powers by granting Investors' motion and concluding the newly identified respondents had notice of the hearing. We decline to vacate the award on this basis.

### 3. Agreement to Arbitrate

Appellants contend the trial court improperly found there was an agreement to arbitrate the dispute before FINRA. Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute absent agreement. Howsam, 537 U.S. at 83. Nonsignatory parties may be bound by a written arbitration agreement if compelled by "ordinary principles of contract and agency" such as incorporation by reference, assumption, agency, veil piercing/alter ego, or estoppel. Thompson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2nd Cir. 1995).

The parties do not dispute that Investors and PacWest, represented by Swayne III, entered into a written agreement to arbitrate that included any disputes between customers and PacWest "or their agents." The Panel found that Pizelo, Swayne II, and WMS were identified at the hearing as "control persons" of PacWest. In concluding that the parties agreed to arbitrate the

dispute before FINRA, the trial court noted that (1) Pizelo was former CEO of PacWest and "actively represented" PacWest during at least one pre-hearing conference and (2) Swayne III testified under oath at the arbitration hearing that WMS was a d/b/a of himself and that his father Swayne II was CEO of WMS. Appellants have not shown that the Panel's decision was irrational or manifestly disregarded the law. As control persons, Pizelo, Swayne II, and WMS were bound by the written arbitration agreement.

Moreover, FINRA Rule 12200 requires FINRA members and associated persons to arbitrate disputes under the FINRA Code when arbitration is "requested" by the customer and the dispute "arises in connection with the business activities of the member." Pursuant to this Rule, customers can compel registered members of FINRA to arbitrate certain disputes even when no written arbitration agreement exists. Herbert J. Sims & Co., Inc. v. Roven, 548 F.Supp.2d 759, 763 (2008). Pizelo and Swayne II were licensed FINRA members at the time of the sale, and as such were also bound to arbitrate by the Code.

Appellants also contend that the Panel had no authority to render an award against Pizelo, Swayne II, and WMS because they did not sign a Submission Agreement. FINRA Rule 12100 states that "parties must sign [a Submission Agreement] at the outset of an arbitration in which they agree to submit to arbitration under the Code." But Appellants have cited no authority for the proposition that lack of a Submission Agreement divests FINRA of authority where the parties are otherwise bound by a written arbitration agreement or via

13

their status as FINRA members. Were this so, parties could avoid liability merely by refusing to sign a Submission Agreement. The Panel did not exceed its authority or act in manifest disregard of the law in concluding that Appellants were bound by agreements to arbitrate the dispute with FINRA.

### 4. "John Doe" Pleading

Appellants argue the Panel's Order violated state and federal principles of "John Doe" pleading. Citing Powers v. W.B. Mobile Services, Inc., 182 Wn.2d 159, 164, 339 P.3d 173 (2014), they contend the Statement of Claim did not identify the "John Does" with sufficient particularity to support an arbitration award against them. In Powers, the plaintiff filed a personal injury lawsuit against two named defendants and two "John Does." 182 Wn.2d at 161. The court held that service of process on a named defendant tolled the statute of limitations pursuant to RCW 4.16.170 as to an unserved "John Doe" who had been identified with reasonable particularity. 182 Wn.2d at 164-66. Appellants assert the Statement of Claim failed to meet this standard because it merely identified the "John Does" as "control persons." But this is a FINRA arbitration, not a personal injury claim filed in court. The parties' rights with regard to arbitration are governed by the contract, the FINRA Rules, and the provisions of the FAA. And tolling of the statute of limitations is not at issue. Powers has no bearing on this case.

Appellants also note that fictitious pleading is generally not permitted in federal court unless the plaintiff's description of the defendant is so specific as to be "surplusage." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).

14

Again, Appellants cite no authority for the proposition that this principle applies in a FINRA arbitration proceeding.

Judicial review of an arbitration award governed by the FAA is limited to the narrow grounds set forth in 9 U.S.C. § 10(a). Appellants do not meet those narrow statutory grounds. We affirm the trial court's decision upholding the arbitration award.

Affirmed.

Chun, J.

WE CONCUR:

Mann, A.C.J.

Leach, J.